## Equitable Life Insurance Company v. R. R. Hazlewood.

### No. 2783.

1. **Insurance—Warranty by Insured.**—A warranty by the insured in an application upon which an insurance policy is issued must be strictly complied with.

2. **Same—Distinction.**—While the doctrine of warranty will be strictly applied, it should be as strictly limited to the precise undertaking of the party making it.

3. **Same.**—Endorsed upon the application and above the signature of the applicant was the printed paragraph: "It is hereby agreed that all the foregoing statements and answers, as well as those made or to be made to the society's medical examiner, are warranted to be true, and are offered to the society as a consideration of the contract." *Held*, that this warranty did not warrant, in addition to the truth of the answers made to the medical examiner, that the examiner should correctly reduce his answers to writing and report them as made.

4. **Same.**—Where in replication to an answer pleading the warranty and its breach, in that true answers were not made as shown in the medical examination as reported, the plaintiff alleged and there was testimony supporting that the insured had made true answers in respect to the specified matters, but that the medical examiner had not correctly reduced them.to writing, the applicant not having signed the examination. *Held*, that it was proper to refuse a charge assuming that the applicant had had his answers put down in writing by the medical examiner.

5. **Charge.**—Where the pleadings contested the truth of specific representations, it was proper to refuse a charge asked by the defendant, to find for the defendant if the representations, etc., were in any respect untrue. The charge should apply only to such questions as were put in issue.

6. **Care on Part of Insured—Medical Examination.**—In absence of anything putting him on inquiry the assured was not bound to assume the exercise of supervisory power over the work of the medical examiner in reducing the examination to writing. If, however, the insured by any means had knowledge that his answers were not being correctly taken, it did become his duty to correct them. Failing to do so he would be estopped to deny them.

7. **Application for Insurance.**—In the application the insured denied ever negotiating for insurance with any other company. It was shown that while the application was being written it was made known by the insured that he had applied to the "Legion of Honor." That the agent of the insurance company suggested that mutual benefit companies were not contemplated by the inquiry upon which the answer was given, the agent knowing of the negotiations with the "Legion of Honor." *Held*, that by these facts there was no misrepresentation to the company.

8. **Insurable Interest.**—A person not having an insurable interest in the life of another can not take and hold by an assignment a policy upon the life of such other person, and a creditor can only take and hold such a policy by assignment to an extent sufficient to secure his debt.

9. **Same—Designation of Beneficiary.**—So far as public policy is concerned, the rights of one designated in the policy as the beneficiary, and who has no insurable interest, would not differ from those of an assignee in like condition.

10. **Policy Held by One Not Having Insurable Interest.**—A policy is not void when held by or in name of one not having an insurable interest. The policy is collectable, the proceeds to be for use of those having legal right thereto.

11. **Insurable Interest—Brother and Sister.**—It seems that a brother may take the benefit of a policy taken in his name by the insured party.

12. **Same—Creditor.**—A creditor would be allowed to provide for a sum sufficient when collected to cover his demand, and such disbursements as may be required to keep the policy in force, with accrued interest. This would limit his recovery.

APPEAL from Delta.   Tried below before Hon. E. W. Terhune. The opinion states the case.

*Maxey, Lightfoot & Denton,* and *Hodges & Lane,* for appellant. — 1. Where a policy of life assurance was taken out for speculation, at the instance of the beneficiary who furnished the money to pay the premium, upon the life of a brother twenty-eight years of age, the beneficiary being a man in no way dependent upon the assured, even though there might have been a small indebtedness greatly disproportionate to the policy, such policy can not be sustained, but is a wagering contract and void as against public policy.   Price v. Knights of Honor, 68 Texas, 366, and authorities cited; Levy v. Taylor, 66 Texas, 652; Warnock v. Davis, 104 U. S., 782; Cammack v. Lewis, 15 Wall., 643; Lewis v. Phœnix Mutual, 39 Conn., 100; Singleton v. Ins. Co., 27 Am..Rep., 321; Life Ins. Co. v. Hogan, 22 Am. Rep., 180; Keystone Mutual v. Norris, 115 Pa. St., 446; Bacon on Ben. Soc., pp. 368, 370, 595, 363; Bliss on Ins., pp. 27, 40–2.

2.   Where both the application and the policy refer to each other and warrant that all the statements made in the application, as well as those made by the assured to the medical examiner, are true, and stipulate that if any of such statements are in any respect untrue the policy shall· be void, any misstatement by the assured in such application or examination, whereby the insurer is misled as to his true condition, will avoid the policy.   Ins. Co. v. Long, 51 Texas, 91; Life Ins. Co. v. France, 91 U. S., 510; Jeffries v. Ins. Co., 22 Wall., 47; Life Ins. Co. v. Fletcher, 117 U. S., 519; Vose v. Mfg. Co., 6 Cush., 42; Life Ins. Co. v. McFagan, 60 Am. Rep., 665; Bliss on Life Ins., secs. 34, 36–8, 50, 54, 58–60, 64, 77; Bacon on Ben. Soc., secs. 233, 427; May on Ins., secs. 186, 187, 298; Bliss on Ins., sec. 82, pp. 122, 123; Powers v. Life Association, 50 Vt., 630.

3.   Where the contract between the parties for assurance is one of warranty, and the facts in evidence show or tend to show that the affirmative warranty of the assured upon which the policy is based is untrue, the court should so charge the jury as to leave them to find the truth or falsity of such warranted facts; and it is error to allow them to consider outside contemporaneous conversations, or other matters concerning the materiality of the questions which were not carried into the written contract.   Life Ins. Co. v. Davidge, 51 Texas, 244; Ins. Co. v. Long, 51 Texas, 89; Life Ins. Co. v. Fletcher, 117 U. S., 519; Thompson v. Ins. Co., 104 U. S., 252; Ins. Co. v. Mowry, 96 U. S., 544; Bacon on Benefit Societies and Ins., sec. 155, note 1, and authorities there cited; McCoy v. Life Ins. Co., 133 Mass., 85; Miles v. Ins. Co., 3 Gray, 580; Draper v. Ins. Co., 2 Allen, 569; Kibbe v. Ins. Co., 11 Gray, 163.

4.   When a written contract is made between contracting parties it is supposed to embody all the stipulations and agreements upon that subject, and conversations between E. R. Logan and R. R. Hazlewood rang-

ing from February until August, 1887, were wholly irrelevant and misleading and should have been excluded. Lynch v. Ortlied, 70 Texas, 727; Bruner Bros. v. Strong, 61 Texas, 557; Wootters v. Railway, 54 Texas, 294; Jackson v. Stockbridge, 29 Texas, 394.

5. Where all the stipulations of a contract of assurance are set out in writing, and by its terms the statements therein are warranted·to be true, they can not be varied upon a material point by contemporaneous verbal statements and conversations between the assured and the soliciting agent of the company. Ins. Co. v. Mowry, 96 U. S., 544; Ins. Co. v. Fletcher, 117 U. S., 519; McCoy v. Ins. Co., 133 Mass., 82; Miles v. Ins. Co., 3 Gray, 580; Draper v. Ins. Co., 2 Allen, 569; Bliss on Life Ins., sec.·82, pp. 122, 123.

*J. A. Templeton, E. B. Perkins*, and *Ed. H. Bennett*, for appellee.—
1. Henry Clay Hazlewood had an insurable interest in his own life, and if he himself in good faith applied for and obtained the policy sued on, and paid to defendant all premiums due thereon, and if he in good faith had·the same made payable to appellee, said policy would not be a speculative or wagering policy but a valid and binding obligation on defendant. Life Ins. Co. v. Schaefer, 94 U. S., 457; Life Ins. Co. v. France, 94 U. S., 561; Langdon v. Life Ins. Co., 14 Fed. Rep., 272, and authorities there cited; Bacon on Ben. Soc., secs. 248, 249, 397; Bliss on Life Ins., sec. 26; Loomis v. Life Ins. Co., 6 Gray, 399; Aid Assn. v. Houghton, 2 N. E. Rep., 763, and authorties cited; Campbell v. Life Ins. Co., 98 Mass., 381; Life Ins. Co. v. Baum, 29 Ind.,·236; Morrell v. Life Ins. Co., 57 Am. Dec., 92.

2. Henry Clay Hazlewood had an insurable interest in his own life, and could effect such insurance and appoint any one to receive the money in case of his death during the existence of such policy; and it is not for the insurance company, after executing such a contract and agreeing to the appointment so made, to question the right of the appointee to maintain an action on such policy or the motives which actuated the assured in taking out the same. Langdon v. Life Ins. Co., 14 Fed. Rep., 272; Aid Assn. v. Houghton, 2 N. E. Rep., 763; Life Ins. Co. v. Baum, 29 Ind., 763.

3. One brother has an insurable interest in the life of another where there is superadded to that relationship that of debtor and creditor, and in such a case the extent of the recovery will not be limited to the amount of the indebtedness due, but the beneficiary may recover the amount of the entire policy. Goodwin v. Life Ins. Co., 7 Conn., 862; Grant v. Kline, 115 Pa. St., 150.

4. All the conditions and obligations of the contract of assurance will be construed liberally in favor of the assured and strictly against the insurer; and the clearest and most unequivocal language is necessary to cre-

ate a warranty, and all statements and expressions of a doubtful character will be construed as representations merely.   Goddard v. Ins. Co., 67 Texas, 69; Moulor v. Life Ins. Co., 111 U. S., 333; Bank v. Ins. Co., 95 U. S., 673; Life Ins. Co. v. Raddin, 120 U. S., 183; Life Ins. Co. v. Johnson, 2 South. Rep., 125, and authorities cited; Life Ins. Co. v. Rogers, 10 N. E. Rep., 242; Clapp v. Benefit Assn., 16 N. E. Rep., 433; Dilleber v. Life Ins. Co., 69 N. Y., 256; Stout v. Assurance Co., 12 Fed. Rep., 554; May on Ins., secs. 160–65, 174–78;  Bliss on Life Ins., sec. 404; Bacon on Ben. Soc., sec. 468.

5.   The reference in the face of the policy and on the back thereof to the application therefor, and to the statements made in said application, does not distinctly make the statements and provisions on the back of said application a part of the contract of insurance, and they will not be so construed, but such reference will be confined to the face of said application, and to the statements therein made.   Goddard v. Ins. Co., 67 Texas, 69; Moulor v. Life Ins. Co., 111 U. S., 335; Life Ins. Co. v. Johnson, 2 South. Rep., 125; Dilleber v. Life Ins. Co., 69 N. Y., 256–63; May on Ins., secs. 162–65, 170–78.

6.   Where the contract contains inconsistent expressions, one part thereof tending to show an intention to make the answers warranties and another referring to and treating them as "representations" or "statements," such answers will not be construed to be absolute warranties, but they will be representations merely, or if construed to be warranties they will only be held to warrant an honest belief of their truth. Moulor v. Life Ins. Co., 111 U. S., 335; Bank v. Ins. Co., 95 U. S., 673; Life Ins. Co. v. Raddin, 120 U. S., 183; Life Ins. Co. v. Johnson, 2 South. Rep., 125; Life Ins. Co. v. Rogers, 10 N. E. Rep., 242; Clapp v. Benefit Assn., 16 N. E. Rep., 433; May on Ins., secs. 159, 162, 164, 165, 168–70.

7.   The provision on the back of the policy, that "if any statement made in the application for this policy be in any respect untrue, this policy shall be void," etc., will not be construed to mean that all such statements must be absolutely and literally true, but only that they are true to the best of applicant's knowledge and belief; and no statement in said application made by the assured, and which he at that time honestly and in good faith believes to be true, would vitiate the policy, even though it should ultimately appear that such statement was not in all respects literally true.   Moulor v. Life Ins. Co., 111 U. S., 335; Life Ins. Co. v. Johnson, 2 South. Rep., 125; Life Ins. Co. v. Rogers, 10 N. E. Rep., 242; Clapp v. Benefit Assn., 16 N. E. Rep., 433; Life Ins. Co. v. Booker, 9 Heisk., 606; May on Ins., secs. 168, 169, 170; Bacon on Ben. Soc., sec. 214; Andrews v. Sup. L. K. of H., 17 Atl. Rep., 119.

8.   Upon an examination of the application made by the assured in connection with the policy sued on, it is clear that the appellant required nothing more of the applicant than to make full, fair, and truthful state-

ments to all questions asked in the application, etc., according to the best of his knowledge and belief; and the applicant was only required to disclose such facts regarding his health as he knew, truthfully and honestly, and the court will not construe his answers so made as warranties, but they will be construed only as representations. Moulor v. Life Ins. Co., 111 U. S., 335; Life Ins. Co. v. Raddin, 120 U. S., 183; Life Ins. Co. v. Johnson, 2 South. Rep., 125; Life Ins. Co. v. Rogers, 10 N. E. Rep., 242; Clapp v. Benefit Assn., 16 N. E. Rep., 433; Dilleber v. Ins. Co., 69 N. Y., 256.

9.   The court did not err in refusing to construe the contract of insurance as one of warranty; nor did the court err in permitting the jury to consider the contemporaneous conversations and other matters introduced in evidence concerning the statements and representations made to and by the assured, and made to and by the agents of appellant in the making and consummation of said contract. Ins. Co. v. Lewis, 48 Texas, 622; Ins. Co. v. Stone, 49 Texas, 4, 13, 14, and authorities cited; Ins. Co. v. Wilkinson, 13 Wall., 222; Life Ins. Co. v. Mahone, 21 Wall., 152; Leuder's Exrs. v. Ins. Co., 12 Fed. Rep., 465; Bacon on Ben. Soc., sec. 458, and the authorities cited in notes; May on Ins., secs. 499, 500, and notes; Life Ins. Co. v. Pierce, 18 Pac. Rep., 291, and authorities cited; Wheaton v. Ins. Co., 18 Pac. Rep., 758.

10.   The court did not err in admitting in evidence the statement of E. R. Logan giving the conversation between said witness and the assured in regard to the written answers of the assured to the questions on the back of the application as to whether negotiation was then pending for other assurance and whether a policy had ever been applied for which was not thereafter issued, and in which witness claimed to have explained to the assured the construction which was placed upon said questions by appellant. This evidence did not vary the terms of the written contract but it was only explanatory of the construction placed thereon by the company. Ins. Co. v. Stone, 49 Texas, 4; Ins. Co. v. Lewis, 48 Texas, 622; Life Ins. Co. v. Wilkinson, 13 Wall., 222; Ins. Co. v. Mahone, 21 Wall., 152; Leuder's Exrs. v. Ins. Co., 12 Fed. Rep., 465; Bacon on Ben. Soc., sec. 458, and notes; May on Ins., secs. 499, 500, and notes; Ins. Co. v. Pierce, 18 Pac. Rep., 291, and authorities; Wheaton v. Ins. Co., 18 Pac. Rep., 758.

HENRY, ASSOCIATE JUSTICE.—Upon the application of Henry C. Hazlewood, appellant, in August, 1887, issued its policy upon his life, payable "to Robert R. Hazlewood, if living; if not, then to his brother Henry C. Hazlewood, for the sum of fifteen thousand dollars, payable at the death of the said Henry C."

H. C. Hazlewood was a younger brother of R. R. Hazlewood. He died in March, 1888, aged then about twenty-eight years.

Appellee, beginning with the year 1881, and between that time and the date of the application for the insurance, had advanced to the said Henry C. various sums of money, amounting to about twelve hundred dollars, for which the said Henry acknowledged an indebtedness.

On the back of the application for the insurance, and just above the signatures of both of said Hazlewoods, is a printed agreement in the following words:

"It is hereby agreed that all the foregoing statements and answers, as well as those made or to be made to the society's medical examiner, are warranted to be true, and are offered to the society as a consideration of the contract."

In the body of and on the back of the application and above said signatures there are a number of questions and answers relating to the risk. Attached to the application is another paper styled "Medical Examiner's Report," at the beginning of which appears the signature of Henry Clay Hazlewood, and at the end of it the name of the medical examiner.

Between the two signatures there appear a great number and variety of questions and answers relating to the history of the said Henry, and of his ancestors and collateral kindred, and to his physique, system, general health record, habits, and environment. The answers are usually "yes" or "no," and from the space allowed for them in the form used it is evident that they are required to be monosyllabic.

Some of the answers are evidently made by the medical examiner, and some by the subject of the examination. There is nothing but the nature of the answers to distinguish those of the medical examiner from those of the subject of the examination, and it is not easy to distinguish, in some instances, by which one the answer was really made.

While many of the questions answered by the witness relate to facts necessarily within his knowledge, and to which he evidently ought to have been able to give categorical and truthful answers, there are others seemingly required to be, and in fact answered by him, about which he could not in the nature of things have had exact and positive knowledge, and about which it is not probable that he could have expressed himself satisfactorily by simply answering "yes" or "no."

All answers were written down by the medical examiner.

The policy sets out on its face that it is issued "in consideration of the application, and of each statement made therein."

Among the provisions of the policy is one reading, "If any statement made in the application for this policy be in any respect untrue this policy shall be void."

The application set out on its face: "I certify that I am temperate in my habits, and am, to the best of my knowledge and belief, in sound physical condition, and a satisfactory subject for life assurance." This was signed by the insured and endorsed by the beneficiary.

Under the general health record, the question was asked in the written and printed medical examination which was sent forward to the company in New York: "13th. Any history of serious illness, injury, or infirmity, etc.;" to which the insured answered, "No."

"16th. B. When and for what has medical advice been sought within the last three years?" to which the insured answered, "Nothing."

The medical examiner of defendant testified that he asked both of the above questions and the assured answered them as recorded, and made no other statements under those heads. He says: "I wrote the answers; Mr. H. C. Hazlewood was sitting at my left elbow; I asked him each question and wrote the answer as he gave it; first had him sign at the top, asked him questions 1 to 18 inclusive, and then wrote the answers. After the examination he asked me what sort of a risk he was; I told him he could see for himself, and gave him the report and he read it over for himself. I asked him each question separately and wrote his answers. He told me he had not sought medical advice in three years. That question is considered material; all are so regarded, as all go to make up the report. * * * Henry Clay Hazlewood gave no history of mental disorder or derangement; applicant ought to have informed me of any mental derangement—not absent-mindedness or hallucinations of fear and the like. General belief that some one was after the applicant to kill him, or imagining something to exist that did not, would be a serious question."

In the written examination the question was asked: "6th. Any history of mental derangement?" to which the applicant answered, "No."

In the medical examination is the printed question to the applicant: "8th. A. Ever spat blood, or any history of chronic hoarseness or cough, or of asthma or shortness of breath?" to which the insured answered, "No."

The controverted questions as to breaches of warranty raised by the pleadings, referred to in the evidence and discussed in the brief of appellant's counsel, are thus stated in the brief:

"The applicant covenants in writing and warrants that to the best of his knowledge and belief he is in sound physical condition. He warrants that he has not sought medical advice for anything within the last three years. He warrants that there has been no mental derangement. He warrants that there is no application pending for other assurance. He warrants that there has been no severe illness, coughs, or other ailments, etc."

It is contended that the court erred in refusing to give the following charge at the request of the defendant: "If the jury believe from the evidence that Henry Clay Hazlewood, in the application for the policy of assurance, warranted that all the statements in such application and all the answers and statements made to the society's medical examiner were

true, and that such application was made a part of the policy, and it was therein provided that if any statement in such application was in any respect untrue the said policy should be void, then I charge you that all three of such instruments, taken together, constitute the contract between the parties, and a warranty on the part of the assured that all the statements and answers to the medical examiner were true; and if you further believe from the evidence that the said Henry Clay Hazlewood, in his medical examination, in answer to the printed questions propounded by the society, had his answers to said questions put down in writing by the medical examiner opposite said questions, after said Hazlewood had signed said medical examination, and that after said answers were put down he read over and examined the same and assented thereto, and the same was sent forward with the application as the basis of the policy, and the same was issued by the defendant upon the reliance of the truth of such answers, then if you find from the evidence that said written answers in said medical examination were in any respect untrue, you will find for the defendant." And also "in refusing to grant the defendant's motion for a new trial in this, that it was clearly proved that the contract was embraced in the application, the answers of the assured to the medical examiner and the policy taken together; and they constitute a warranty that the statements therein made were true, when the facts fully show that they were not true; that at the time of the application the assured was not in sound physical condition, but was in bad health, and misled defendant and its officers by his statements regarding his condition."

The doctrine contended for by appellant, that "a warranty must be strictly complied with," is fully maintained by the authorities quoted in his brief.

Mr. Bliss, in his work on Insurance, says: "By introducing them they stipulate in effect that they are so material that if not strictly complied with the whole contract is rendered void. A misstatement in a warranty is therefore fatal to the contract, although arising from the most innocent mistake, or from false information afforded by others, or from mere inadvertence, and as much so as if made with the most willfully fraudulent intent." P. 48, sec. 36.

In the case of Jeffries v. Life Insurance Company, 22 Wallace, 53, the court says: "The proposition at the foundation of this point is this, that the statements and declarations made in the policy shall be true. This stipulation is not expressed to be made as to important or material statements only, or to those supposed to be material, but as to all statements. The statements need not come up to the degree of warranties. They need not be representations even, if this term conveys an idea of an affirmative having any technical character. Statements and declarations is the expression; what the applicant states and what the applicant declares. Nothing can be more simple. If he makes any statement in the appli-

cation, it must be true.    If he makes any declaration in the application, it must be true.    A faithful performance of this agreement is made an express condition to the existence of a liability on the part of the company."    Again, on page 56:    "Many cases may be found which hold that where false answers are made to inquiries which do not relate to the risk, the policy is not necessarily avoided unless they influenced the mind of the company, and that whether they are material is for the determination of the jury.    But we know of no respectable authority which so holds, where it is expressly covenanted as a condition of liability that the statements and declarations made in the application are true, and when the truth of such statements forms the basis of the contract."

In the case of Ætna Life Insurance Company v. France, 91 United States, 512, the court adopts the reasoning in the above case, and adds: "It is only necessary to reiterate that all the statements contained in the proposal must be true; that the materiality of such statements is removed from the consideration of the court or jury by the agreement of the parties that such statements are absolutely true, and if untrue in any respect the policy shall be void."

In the case of New York Life Insurance Company v. Fletcher, 117 United States Reports, 519, referred to in the brief of appellant, the insured made certain statements and representations respecting himself, his life, and his past and present health, to which he appended a declaration warranting their truthfulness, and agreeing that they should be the basis of any contract between him and the company, and that if they or any of them were in any respect untrue, the policy which might be issued thereon should be void; and further agreeing that inasmuch as only the officers of the home office had authority to determine whether or not a policy should issue on any application, and as they acted only on the written statements and representations referred to, no statements or representations made or information given to the persons soliciting or taking the application for the policy should be binding on the company, or in any manner affect its rights, unless they were reduced to writing and presented at the home office in the application.    The statements and representations, with this declaration accompanying the application, and forming part of it, were forwarded to the home office.

The policy recited that it was issued in consideration and upon the faith of the statements and representations contained in his application, all of which had been warranted by him to be true.

In delivering the opinion of the court, Justice Field says:    "It was his duty to read the application he signed.    He knew that upon it the policy would be issued, if issued at all.    It would introduce great uncertainty in all business transactions if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show after it had been obtained that he did not know the contents of his

proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity.   Contracts could not be made, or business fairly conducted, if such a rule should prevail.   *   *   *   But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true.   If he had read even the printed lines of his application he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office."

We think there is a material difference between the undertaking by the insured in that case and in the one before us.   In that case he agreed that he would be bound by the statements as written down, and that no statements not written down should be binding on the company or in any manner affect its rights.

In the case before us the agreement of the insured was that his answers made or to be made to the medical examiner were warranted to be true. He did not warrant that his answers would be written down correctly by the medical examiner, or that the answers given by him would be correctly reported to the company.

While the doctrine of warranty will be strictly applied, it should be as strictly limited to the precise undertaking of the party making it.   If beyond requiring that the insured should warrant the truth of all answers given by him, the company intended, as it had the right to do, that he should also warrant that his answers should be correctly written down and reported, and that he would warrant them not only as given by himself but as written down, the agreement could have been made to so express, and it ought to have been done.

The charge requested by the defendant, as above stated, and refused by the court, reading that if the jury found from the evidence that said "written answers" were "in any respect" untrue, they should find for the defendant, extended the warranty of the insured so as to bind him for the truth of the answers as written, instead of their truth as given by him.   In view of the fact that plaintiff's contention was that the insured gave true answers to the questions, which were incorrectly written down and reported by the medical examiner, and that the insured did not read the answers, or sign the paper containing them, which there was evidence tending to support, we think the charge was incorrect in this particular.

The signature of the insured being at the beginning of the examination instead of at its close, seems to us to have been required to be placed there as one means of identifying him as the person who had made the

application rather than for the purpose of binding him, as a party, for the truth of the contents of the paper.

The assumption in the charge that the insured "had his answers to said questions put down in writing by the medical examiner" finds nothing in the evidence to support it.

The direction to find for the defendant if the jury should find the written answers were in "any respect" untrue, was, we think, if no other objection to it existed, inapplicable to this case and tended to mislead the jury. Under it the jury would have been required to consider every answer of the insured, whether any contention existed over it or not, and however difficult it might have proved for them to separate answers really proceeding from the medical examiner himself from those made by the insured; and if they believed any one answer was in any particular untrue, they could have found against plaintiff for that reason.

No charge on the subject ought to have been given that was not confined to such questions and answers as were put in issue by the pleadings and evidence, and the one requested should not have been given because it was not so limited.

What we have said about the charge is applicable to the assignment of error with regard to overruling defendant's motion for new trial predicated upon the same ground.

While the insured can not, as is contended for by appellant, be held bound as a warrantor for the truth of the answers as written, it does not by any means follow that he was under no obligation about their being correctly written down, insomuch as that depended upon him or was properly within his control. He had undertaken to make true answers, and he must be presumed to have known that the object in having them written down was to furnish information to the absent officers of the corporation of material importance to them in determining whether or not they would execute the contract.

Where there were no circumstances to excite his suspicion to the contrary, we see no reason, however, why he may not have trusted to the medical examiner's correct and honest performance of this duty. We do not think his contract, or the exercise of ordinary prudence, demanded of him to assume that there was any want of capacity, care, or honesty upon the part of the medical examiner, or made it his duty to assume the exercise of a supervisory power over the work of that officer. As a general rule, no doubt, the subjects of insurance will be but little qualified for such a task.

If, however, it did by any means come to the knowledge of the insured that answers given by him had been incorrectly written down, it then became his duty to see that the proper corrections were made, and if he failed to do so, then, although not bound by a warranty, plaintiff ought now to be held estopped from disputing them as written; and if under

such circumstances incorrectly written answers materially affected the risk, and the issue was properly raised by the pleadings and sustained by the evidence, a recovery ought not to be had.

We deem it sufficient to say that we do not think this character of issue was presented by the pleadings or the charge of the court, and the record before us suggests that the evidence upon it would have been thoroughly conflicting and amply sufficient to support a verdict in favor of plaintiff.

The defendant alleged in its answer that the insurance was taken out by plaintiff as a speculative and wagering policy. It was proved that plaintiff loaned to the insured the money with which he paid the required premium.

The corporation's agent through whom the insurance was effected was permitted to testify to the negotiations preceding the application, tending to show that both the plaintiff and the insured were urged by the agent of the corporation to apply for the insurance; that the premium was paid by the insured, and that he first thought of making the minor children of the plaintiff the beneficiaries in the policy, but finally concluded not to do so, because in the event of his own marriage and desire to change the beneficiary to one more nearly connected with himself, it would be more easily accomplished if his brother was the beneficiary than it would be if his minor children were the beneficiaries.

The application for insurance contains the following questions and answers: " Is any negotiation for other assurance now pending or contemplated?" To which the insured answered in writing, " No." " Has a policy ever been applied for which was not thereafter issued, or which, if issued, was modified in amount, kind, or rates? If yes, for what company and when?" To which the insured answered in writing, " No."

There was conflicting evidence as to whether the insured had not applied for membership in an order known as the " Legion of Honor."

Plaintiff was permitted to prove by the agent of the corporation by whom the application was secured that pending negotiations between him and the insured, and before the insured made answer to said questions, he, the insured, asked him, the agent, " What was meant by that; if it referred to assessment companies or mutual companies? Witness explained that it did not, and the insured then said he had made application to the 'Legion of Honor' for assurance, whereupon witness told him that the 'Legion of Honor' was a mutual company and was not regarded as a life insurance company, and he was instructed by the general agent of defendant not to consider them as assurance companies."

We think the evidence was properly admitted in each instance. On the issue as to whether it was a wagering policy, the statements made by the witness were pertinent, and have no tendency to control any written evidence or the contract. Nor can we see any impropriety in permitting

the agent of the corporation to give to the subject of the insurance information about facts proper for him to know. Lodges that furnish insurance to their members may also perform other important functions, and a rejection of an applicant by one of them would not necessarily be predicated upon his unfitness for insurance. It may be a rule of the defendant company not to treat such societies as coming within the meaning of the question, and if it is we are not able to perceive any sufficient reason why the fact that the statement was made may not be proved.

Outside of the evidence objected to the record fails to show that the insured in fact ever made an application for such membership or that he was ever rejected.

It is contended that the plaintiff had no insurable interest in his brother's life, wherefore the cause of action sued upon was a wagering contract and void, as against public policy.

The rule is stated generally in Bliss on Life Insurance, section 7, that "No person can procure a valid insurance upon a life unless he has an interest in such life."

The Supreme Court of the United States, in the case of Insurance Company v. Schaefer, 94 United States, 460, say: "It is generally agreed that mere wager policies—that is, policies in which the assured party has no interest whatever in the matter insured, but only an interest in its loss or destruction—are void, as against public policy. It is well settled that a man has an insurable interest in his own life and in that of his wife and children, a woman in the life of her husband, and the creditor in the life of his debtor. It may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life. And there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend.

"The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the assured has no interest."

In the case of Price v. Knights of Honor, Chief Justice Willie, speaking for this court, said:

"It is almost universally conceded that policies procured by persons having no interest in the life of the insured are void at common law, as against public policy." 68 Texas, 366.

In the case of the Ætna Life Insurance Company v. France, 94 United States, 561, it appears that the insurance was applied for by Chew on his own life for the benefit of his sister Lucetta P. France, who was a married woman, and in no way dependent on her brother for her support. The evidence tended to show that Mrs. France had at different times loaned her brother $2400. The insurance was $10,000.

At the time the policy was issued Chew was unmarried, but was engaged to be married, and was in fact married the next day.

The policy was held "sustainable at law on account of the nearness of the relationship between the parties, and especially as Mrs. France, at the time the insurance was effected, was one of Chew's next of kin, prospectively interested in his estate as a distributee."

The doctrine is well settled by the weight of authority that a person not having an insurable interest in the life of another can not take and hold by an assignment a policy upon the life of such other person, and that a creditor can only take and hold such a policy by assignment to an extent sufficient to secure his debt.   Cammack v. Lewis, 15 Wall., 643; Warnock v. Davis, 104 U. S., 782; Price v. Knights of Honor, 68 Texas, 361.

It is contended by appellee that every person has an insurable interest in his own life, and that when he is the actor he may take out an unlimited amount of insurance upon his own life and make it payable to whoever he may please as beneficiary, without regard to such person having an insurable interest in his life.

In Bishop on Life Insurance it is said:

"A person has undoubtedly an insurable interest in his own life, and that interest supports a policy, whether he makes the loss payable to himself, his executors, or his assigns, or to a nominee or appointee named in the policy.   Nor is a policy obtained by one on his own life for the benefit of another, which latter advances the premium, necessarily void.   The question is whether the policy was in fact intended to be what it purports to be, or whether the form was adopted as a cover for a mere wager.   If the plaintiff and the insured confederate together to procure a policy for the plaintiff's benefit, when he is not and does not expect to be a creditor of the insured, and with a view of having the policy assigned to him without consideration, the policy is void."

The only distinction we can see in any case between the assignment of a policy taken by a person on his own life to one having no insurable interest, and the designating such person without insurable interest in the original transaction as the beneficiary, is that the insurer may not know of the assignment, but would necessarily be aware of the designation in the policy.

So far as the question of public policy is concerned, we can see no substantial distinction between the two proceedings, and if one is invalid it seems to us the other ought to be held equally so.

An assignment of a valid policy to one having no insurable interest in the life insured does not invalidate the policy.   The assignee may collect and apply the proceeds, if he is a creditor, to the extinguishment of his debt and such sums as he may have disbursed for the purpose of keeping the policy alive, and the surplus may be collected for the benefit of the heirs of the person whose life was insured.

We see no reason why the same rule may not be applied to a person

designated in the policy as the beneficiary, treating him, when he has no insurable interest, as an assignee, appointee, or trustee to receive the proceeds for whoever may be lawfully entitled to enjoy them. The insurer will then be required to pay the sum it has promised to pay, and the money can not be appropriated by anybody not having a legitimate right to it.

The exact degree of relationship that must exist between two persons to give one an insurable interest in the life of the other, on account of the relationship alone, we have not found to be clearly defined. Brothers and sisters seem to be on the dividing line. Whether that degree of relationship can be included has been disputed. The case of Insurance Company v. France is an authority in support of the proposition that it may be included, and we are unwilling to hold that it ought to be excluded.

To what extent a creditor may insure the life of his debtor is not announced when it is decided that he can only appropriate of such insurance an amount sufficient to pay his debt and interest. He must be allowed to provide for a sum sufficient when collected to cover his demand and such disbursements as may be required to keep the policy in force, with accrued interest. The sum required for that purpose may, very many times, exceed the debt. It would be an extreme case in which a court would be justified in saying that the amount secured was too great.

When the insurance is obtained by a person on his own life and made payable, originally or by assignment, to another having none or only a limited insurable interest in his life, as the surplus, after the payment of the charges, will go to the heirs of the party whose life is insured, we see no reason for limiting the amount for which the insurance may be taken out.

When the insurance is not contracted for by the person whose life is insured, but by a creditor in his own name, so that there is no party to the contract except himself and the insurer, it becomes immaterial what amount may be contracted for, as no more will be collectable than will be ultimately sufficient to discharge his debt and disbursements on the policy, including interest upon both.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered December 6, 1889.