PHŒNIX ASSURANCE COMPANY OF LONDON, ENGLAND, V.
B. F. COFFMAN ET AL.

No. 726.

1. **Insurance—Pleading—Stipulations in Policy.**—It is not necessary for the plaintiff in an action on an insurance policy, in order to make out a prima facie case, to negative all the stipulations of the policy.

2. **Warranty in Policy—Watchman on Premises.**—A warranty in a policy of insurance, "that a watchman shall be kept on duty at night," in the absence of testimony pointing out clearly the duty of a watchman, is complied with by placing on the premises a watchman charged with the duties of watching the property during the night, even though such watchman may have been asleep when the fire began.

3. **Waiver of Condition in Policy—Agency.**—An insurance company continuing a policy, after notice, to an agent authorized to issue and cancel policies, of a lien upon the property, can not avoid its payment on that ground after a loss.

4. **Construction of Insurance Policy.**—Where it is stated in an application for insurance, which was a warranty, that a watch-clock would be kept on the premises, and the agent knew at the time that there was no watch-clock kept, and the policy makes no provisions with regard to it, the insured would have a reasonable time to procure it.

5. **Same.**—In an application for insurance on a mill, the question was asked, whether the insured had ever been refused insurance on the property, to which he answered no. It appeared that the applicant had been refused insurance by a company which did not insure mill property. *Held*, that the question had no reference to companies which did not in any case write insurance of mills.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Leake, Henry & Reeves,* for appellant.

*W. P. Ellison* and *H. C. Coke,* for appellees.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by B. F. Coffman and the National Exchange Bank of Dallas. Their original petition alleged, that the insurance company issued to Coffman its policy for $3000, on the 23rd day of June, 1891, upon his three-story metal-roof mill building, and the fixed and movable machinery therein situated, including boiler and engine; that thereafter, to wit, on July 4, 1891, and while said policy of insurance was in full force, all of said property, with two small exceptions, was totally destroyed by fire; that after said loss said policy was by the said Coffman assigned to the National Exchange Bank, as collateral security.

The appellant, in answer to the petition, set up certain warranties on the part of the assured which had not been complied with, and by reason of which it claimed that the policy was void. The pleading of the parties with reference thereto will be more particularly noticed hereafter. There was a judgment for the insured, from which the company has appealed.

The testimony, and the verdict and judgment thereon, justify the conclusion, that on June 23, 1891, appellant issued to appellee the

policy of insurance sued on, whereby, in consideration of $150 premium, the receipt of which was acknowledged, it agreed to indemnify said appellee Coffman against loss or damage by fire in the sum of not exceeding $3000, upon certain property at Alvarado, Texas, known as the "Alvarado Roller Mill and Elevator Company," being $928.50 on the three-story frame, metal-roof building; $1714.50 on the fixed and movable mill machinery, and $357 on boiler and engine, such policy to remain in force one year. On July 1, 1891, the policy was amended by indorsement, so that the first item should include the one-story, metal-roof, frame warehouse addition, and by which the rate of premium was raised from 5 to 5½ per cent, and an extra premium of $15 being paid by the assured. The conditions of the policy, or such thereof as were not waived by appellant, were complied with by appellee. Those put in issue by the pleadings and evidence will be more specifically noticed under the different assignments of error considered. On July 4, 1891, and while said policy was in force, said property so insured was destroyed by fire, except a small portion thereof, and appellee's loss and damage under said policy, according to its terms, was fully the amount found by the verdict and judgment. Within the time prescribed by the policy, and in accordance with its terms, proofs of loss were made out by appellee and delivered to appellant, and upon its failure to pay the loss, this suit was brought.

1. The third assignment of error, which is the first presented by appellant, is as follows: "Proof by plaintiffs of a compliance by Coffman with the warranties contained in the policy of insurance, and in the application therefor, was a condition precedent to their right to recover, and the court erred in relieving, by its charge, the plaintiffs from the necessity of proving their compliance therewith, and by charging the jury, in effect, to find for the plaintiffs, if they should find that the insured property was destroyed by fire without the fault of Coffman."

The charge of the court must be construed with reference to the issues made by the pleadings and the evidence. The issues presented by appellant in answer to plaintiffs' petition, set up, in substance, that the contract of insurance embraced several warranties on the part of the insured, viz: (1) That the property was free from incumbrance, except as disclosed in the application, when there was a larger incumbrance, which was not disclosed. (2) That appellee agreed to keep a watchman on the premises, and also a watch-clock, neither of which was done. (3) Appellee stated in his application that he had never been refused insurance on the property, which was untrue. (4) That appellee agreed to keep casks of water and buckets on each floor, which was not done. The charge of the court fairly presented to the jury the defenses relied upon.

It was not necessary for plaintiff, in order to make out a prima facie case, to negative all the stipulations of the policy. The charge of the court, taken as a whole, fairly presented all the issues. Ins. Co. v.

Nichols, 24 S. W. Rep., 910; Dwyer v. Ins. Co., 57 Texas, 181. The charge was properly limited to such issues as were made by the pleadings and evidence. Ins. Co. v. Hazelwood, 75 Texas, 348.

2. The fourth assignment of error is as follows: "It is expressly warranted in the policy of insurance, as well as in the application therefor, that a watchman should be kept on duty at night, or the policy should be void. The evidence shows that the watchman employed by plaintiff was asleep at the time the fire began. The court erred in charging that such warranty was complied with by Coffman if he employed a watchman, believing him to be trustworthy, though as a matter of fact the watchman may have been asleep at the time the fire began."

In the pleading of appellant it does not clearly present this issue. The answer sets out what is claimed to be an application for the policy of insurance, in which appears the following: "Watchman: Do you agree to have a watchman on premises constantly at night and on Sundays, and at all times when work is suspended?" Which question appellant claims was answered, "Yes." And it was further set out in such application, that the said answers and statements are to always be construed and accepted as forming and constituting a continuing warranty; and defendant alleged, that plaintiff "violated the agreement in said application made to have a watchman on said premises constantly at night and on Sunday, and at all times when the work was suspended." This is the only issue presented in defendant's pleading upon the failure of plaintiff to keep a watchman. The policy itself provides, that it is "warranted on the part of assured that a watchman shall be kept on duty at night, or this policy shall be void, special reference being had to assured's application on which this insurance is based, and which is hereby made a warranty by the assured, and a part of this policy." The appellant in its pleadings does not set up this clause in the policy requiring the watchman to be kept on duty at night. We must therefore consider the issues presented upon the application, which bind the insured "to have a watchman on the premises constantly at night and on Sundays, and at all times when work is suspended." Denny v. Ins. Co., 13 Gray, 492.

It was clearly shown by the evidence that a watchman was kept on the premises; it tends to show that he was reliable, though he was asleep at the time the fire began. The issues being confined to the pleadings and the evidence introduced thereunder, we can not hold that a warranty of the policy was broken because the watchman was asleep at the time the fire began. If the insured kept a reliable watchman on the premises, which seems to have been the only issue upon this question in the court below, and it was to this issue that the charge of the court was directed, he certainly complied with the stipulation in the application (if he is bound thereby) "to have a watchman on the premises." As was said by our Supreme Court in the Hazelwood case, above: "While the doctrine of warranty will be

strictly applied, it should be as strictly limited to the precise undertaking of the party making it." 75 Texas, 347; Goddard v. Ins. Co., 67 Texas, 69; Wood on Ins., sec. 60.

In the case of Andes Insurance Company v. Shipman, the Supreme Court of Illinois held, that where a policy required that there should be a watchman on the premises, that it was a matter of no particular consequence what part of the premises he occupied; that if he was about the premises, it was a substantial compliance with the contract. 77 Ill., 192. If appellee in fact furnished a watchman as required by the stipulations of his contract, whom he believed, and had reason to believe, was reliable and trustworthy, and such watchman was put on watch, and he went to sleep, would such a negligent performance of duty avoid the policy? The contract does not provide what the duties of the watchman shall be; the evidence does not show; it does not appear what the custom was in such cases, or what should be required. Appellee testified: "At the time of the fire I had a watchman at the mill named Dean; I employed him as a watchman; I assigned him the duty to be at the mill at a certain hour in the evening when the hands left, and to stay there until the hands came back in the morning, and to watch the mill to see that nobody bothered anything or stole anything." In the absence of any testimony pointing out more clearly the duties requiried of a watchman, we must hold that the appellee complied with the contract by placing on the premises a reliable watchman, charged with the duties of watching the property during the night, even though such watchman may have been asleep when the fire began. Milling Co. v. Ins. Co., 76 Cal., 235; Lumber Co. v. Ins. Co., 89 Mich., 407; Houghton v. Ins. Co., 8 Metc. (Mass.), 123. In the last named case, the question was asked: "Is a watch kept constantly in the building? If no watch is constantly kept, state what is the arrangement respecting it?" Answer: "No watch is kept in or about the building, but the mill is examined thirty minutes *after work*." In that case Chief Justice Shaw said: "Two questions were made at the trial. First, whether this representation of the usual practice amounted to any condition or stipulation that it should be continued. It was ruled at the trial, and the whole court are now of the opinion, that as this examination was manifestly intended as a substitute for a constant watch; as it was one which the assured had in their power to make or cause to be made; as it was one of the precautions tending to secure the property against danger of fire, and tending to its safety; it was one which, as a general practice, the assured were bound to follow, although an occasional omission, owing to accident or the negligence of subordinate persons, servants, or workmen, not sanctioned nor permitted by the assured, or by their superintendent, manager, or agent, might not be a breach of noncompliance."

It does not appear in this case that the watchman usually slept during the time of his watch; but it does appear that he was employed

and placed on duty and kept there to watch the premises during the night.

There is a question raised by appellee as to the effect of the application declared upon, he claiming that he is not bound thereby, because the statements therein were written by appellant's agent, who knew all the facts, and procured a man named Sherman to sign the same, for the fraudulent purpose of avoiding payment of the policy. This question is considered elsewhere.

3. Appellant's fifth assignment is as follows: "The court erred in its charge, wherein the jury were instructed, that if they should find that before the fire Coffman notified the firm of Oakes & Harrison, or either of them, of the existence of a lien on said property, in favor of the National Exchange Bank, and that as agents of said defendant they accepted notice thereof, then the company would be bound by such acts, and plaintiffs would be entitled to recover."

It was proved, that about ten days before the fire appellee notified Oakes & Harrison, who were appellant's agents, with authority to issue and cancel policies, that there was a lien on the property in favor of the National Exchange Bank, for $12,500, and they accepted the notice. Appellant having notice of the lien, and continuing the policy, can not avoid it on that ground after the loss. Ins. Co. v. Griffin, 59 Texas, 510; Ins. Co. v. Lyons, 38 Texas, 253; Banking and Ins. Co. v. Hutchins, 53 Texas, 61.

4. The twelfth assignment of error is as follows: "The court erred in charging the jury, that if defendant's agents knew before the fire that the assured had not procured said watch-clock, or watchman's detector, and that there was not one in the mill, that then the failure to put up one in the mill would not defeat plaintiffs' right to recover, because there was no evidence that defendant's agents knew that no watch-clock or watchman's detector had been procured by plaintiffs; and the application for insurance warranted that there should be a watch-clock or watchman's detector in the mill."

5. The eleventh assignment is, that the court erred in instructing the jury that Coffman would have a reasonable time within which to procure said watchman's clock or detector after the issuance of the policy.

The facts show that the written application for the policy was made out by appellant's agents themselves, and that they procured a man named Sherman, who was working for appellee at the mill, to sign it; that he was not authorized by appellee to sign the application, and so informed appellant's agents at the time. Sherman subsequently informed appellee that he had signed an application for the policy, though it does not appear that appellee was ever informed of the specific provisions of the application, or that it set out any agreements or warranties besides such as were contained in the policy itself.

In the case of Denny v. Insurance Company, 13 Gray, 497, where it was sought to hold the insured responsible for certain questions and

answers embraced in a survey on file which was made by a third party, and referred to in the policy, such "survey" agreeing that the insured should keep a watchman, the Supreme Court of Massachusetts said: "Admitting the soundness and force of this argument, and that the plaintiff is bound by the survey so far as he has recognized and adopted it by accepting the policy, the question still remains to be determined, to what extent such recognition and adoption go. And the answer to this question depends upon the proper and legitimate meaning of the word 'survey,' because it was of this, and this only, that the plaintiff had notice by the terms of his policy. * * * So far as they are of an executory nature, or relate to the use or occupation of the premises subsequently to the date of the policy, it is clear that the plaintiff is not bound by them. He has neither recognized nor adopted them, nor is he estopped from showing that they are not obligatory upon him. The defendants therefore can not sustain their first ground of defense by proof that no watchman was constantly kept in the mill, or that ladders were not erected on the buildings. Those were stipulations by which he was not bound."

In this case the impression conveyed to the mind of the assured by the statement that a formal application for a policy had been made for him, would not carry the idea that solemn covenants were set out therein, which might avoid the policy, and to which no reference was made upon the face of that instrument. It appears from the evidence that appellee was not able to procure a suitable watch-clock in Alvarado, and had arranged with a jeweler to procure one for him, though it had not been put in at the time of the fire. Appellant's agents delivered the policy, knowing that there was no watch-clock in the mill, and the policy itself makes no provision in regard to it. Ins. Co. v. Lewis, 48 Texas, 622. The evidence fails to disclose the object or purpose of a watch-clock. Under the facts and circumstances of this case, it was certainly not contemplated by either party to the contract that it should be suspended until appellee could procure a watch-clock; but if the application is treated as a part of the contract, it should be reasonably construed, and would only be considered as binding the insured to procure a watch-clock, and he would have a reasonable time within which to procure it. What was a reasonable time was properly left to the jury.

6. The eighth and ninth assignments of error attack the following charge of the court: "If you find and believe from the evidence that Coffman or Alford & Scurry, before the issuance of this policy of insurance, had been refused insurance on this mill property by other companies, and that this fact was denied by Coffman in his application herein, then if you find that such refusal was based on the ground that the companies so refusing would not write insurance on any mill property, then since the policy shows that the property insured was mill property, such answer of Coffman, if you find he made it, would not defeat the liability of the defendant company under this policy,

but if you find he was refused insurance on this mill property by companies writing insurance on such property, then his answer would defeat a recovery in this case, unless you further find and believe, that Oakes & Harrison at the time knew of such refusal."

Alford & Scurry were agents of Coffman, and had procured some insurance for him. Oakes & Harrison were agents for appellant, and as such made the contract of insurance and delivered the policy sued on, and collected the premium therefor. They had power to make or cancel insurance contracts for appellant. It was fully shown that they not only wrote and delivered the policy of insurance sued on, but also wrote out the application themselves, as shown above, and procured Sherman to sign it; and it does not appear from the record that appellee ever saw it or knew of its contents, except that Sherman told him he had signed an application for insurance. The questions and answers were written out by Oakes & Harrison, and it does not even appear that they were the answers Sherman made. Among the questions asked in that paper were these: "Q. Has insurance ever been refused on this property by this or any other company? If so, why?" A.: "No." It does not appear that this question was submitted to or answered by Sherman, or any one else; but he was requested by appellant's agents to sign the application for insurance, which he did, protesting that he had no authority to do so. He afterwards informed appellee that he had signed an application for insurance, but it does not appear that appellee was ever informed that Sherman had ever been asked or had answered this question. It was a question which appellant's agents could not have reasonably expected Sherman to answer intelligently as an employe at the mill, nor could such agents fairly expect to rely upon his answer, or to bind appellee by such answer, unless he was informed of it or ratified it. The testimony shows that Alford & Scurry, as agents of appellee, had been refused insurance upon this property; but it further shows that Oakes & Harrison, appellant's agents, knew that other companies had refused to take this risk, and that they, as agents for other companies, had canceled two policies upon the property. Ins. Co. v. Ende, 65 Texas, 153, and authorities cited.

In the Hazelwood case, referred to above, the question was asked in the application, which was made a part of the policy and a warranty, if the assured had ever been refused insurance, to which he answered no. He had been refused insurance by the Legion of Honor, which the agent told him was not regarded as an insurance company, and our Supreme Court held that the statement did not avoid the policy. 75 Texas, 338. In this case, if the answers written out by appellant's agents, and signed by Sherman at such agents' request, can in any proper sense be regarded as a warranty on the part of the insured (which the writer gravely doubts), it certainly could not have reference to any character of insurance except such as was being contracted for. If the insured had been refused insurance in a storm insurance

company, it would not be contended that such question and answer would have any reference to it. For the same reason, it was properly held by the court below, that the question had no reference to companies which did not in any case write insurance on mills. The application shows upon its face that it refers only to mill property, and the the question was correctly limited to such property. "No rule in the interpretation of a policy is more fully established, or more imperative or controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted." 1 May on Ins., sec. 175.

The principles involved in the other assignments of error presented by appellant have been considered under the foregoing assignments. We find no material error in the judgment, and it is affirmed.

*Affirmed.*

Delivered May 29, 1895.