THE STATE, NATHAN A. STACKHOUSE, JOSEPH H. VALENTINE AND ABRAM H. WILLSON, PROSECUTORS, v. JEPTHA C. CLARK ET AL., TRUSTEES OF SCHOOL DISTRICT No. 43, IN THE COUNTY OF SUSSEX.

1.  A special meeting of a school district can vote to raise money to build a school house, although a similar proposition had been rejected at a previous special meeting held in the same year.

2.  The act of 1888 (*Pamph. L.*, p. 93, § 1), amending the act of 1880 (*Pamph. L.*, p. 225, § 1), leaves in force that portion of the eighty-sixth section of the General School act (*Rev.*, p. 1085) requiring the vote

of a majority of the legal voters present upon any proposition to raise money for building a school house. The act of 1888 requires the presence of a majority of the taxable voters of the district, only when any proposition for the condemnation of land is presented.

3. A resolution to raise a single sum for building and furnishing a school house is not bad for uncertainty, because the amount to be used for building and the amount for furnishing are not separately stated.

4. A resolution to raise a sum of money to build a school house was followed by a resolution that several bonds, payable in successive years, should be issued. It was erroneous to issue a certificate to levy the whole amount in one year, as the bonds were to be paid, as they successively matured, by warrants issued in accordance with section 89 of the General School act. *Rev., p.* 1086.

5. A resolution to sell an old school house, passed at the same meeting that it was resolved to raise money to build a new house, is illegal, because no notice was given that the former would be a subject for consideration at the meeting.

On *certiorari.*

This writ brings up the proceedings of a meeting held in School District No. 43, in the county of Sussex, on the 17th day of May, 1888. It was a special meeting, duly called by resolution of the trustees that notice be given that a meeting would be held on that date, at which meeting would be submitted the question—

1. Of ordering a school district tax for the purpose of building a new school house, and furnishing the same, on the present school district land:

2. To authorize the trustees to erect a school house thereon.

3. To authorize the trustees to borrow money to defray the expenses of such erection and furnishing the same, and to provide for the payment of the same by bonding the district.

4. To do any other business within the scope of the foregoing proposition.

At this meeting it was

"*Resolved*, That, for the purpose of securing the money needed to erect and furnish a school house, the sum of $2,500 be raised by issuing five bonds of the district, in the corporate name of the district, in denomination of $500 each.

"*Resolved*, That two bonds shall be issued payable January

1st, 1889 ; two bonds January 1st, 1890 ; one bond January 1st, 1891 ; and that each year until the last bond is paid a tax shall be levied according to law on the property and the inhabitants of the district sufficient to pay the maturing bond, together with the accrued interest on all those then outstanding.

"*Resolved,* That a school house be erected on the present school district land in accordance with the plans and specifications submitted.

"*Resolved,* That the trustees be empowered to carry out the provisions of the foregoing proposition."

Mr. Ayres made a motion, as a substitute for the preceding resolution, that $2,000 be raised by tax for the erection of a new school house and furnishing the same. The motion was adopted. A vote by ballot being taken on the above resolution, resulted as follows : Total of number of votes cast, 99—52 votes for raising the money, 46 votes against raising the money, 1 vote for repairs.

A motion was made to issue four bonds of $500 each—first payable January 1st, 1889 ; second, January 1st, 1890 ; third, January 1st, 1891 ; fourth, January 1st, 1892. Mr. Smith made an amendment to the above motion, that it be paid in three years—$500 payable January 1st, 1889 ; $500 January 1st, 1890, and $1,000 on January 1st, 1891. This amendment was accepted, and, a vote being taken, was declared carried. A motion was made by Mr. Smith to authorize the trustees to sell the old school building and apply the proceeds to the payment of the last maturing bond. The motion was carried. The district clerk made and delivered a certificate to the assessor of Andover township, one of the townships within which this district lies, directing the assessment of the sum of $2,000.

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON.

For the prosecutors, *Francis J. Swayze.*

For the defendants, *Charles J. Roe.*

The opinion of the court was delivered by

. REED, J.   The first objection to the legality of these reso-
lutions is, that the call for the meeting was an act in excess of
the power possessed by the trustees.   This objection is not
rested upon the ground that the trustees have no power to call
a meeting at any time when, in their judgment, the interests
of the district may require it for the purpose of considering
the building of school houses, the appropriation of money for
that purpose and for raising money by bonding the district.
*Rev., p.* 1077, § 39, *subd.* XI.

It is objected that the trustees cannot call repeated meetings
for the consideration of matters which have been under con-
sideration and have been defeated at preceding meetings.   It
is contended that the meeting of May 17th is invalid for this
reason.   The facts upon which this contention is rested are,
that at the annual meeting held in March, 1888, the project
of building a new school house was broached, and a committee
was appointed to take the subject into consideration.   The
committee reported at a second adjourned meeting in favor of
the project, which report was rejected.   No notice had been
given in the call for the annual meeting that such a project
was to be discussed.   On the day of the adjourned meeting
the trustees gave notice of a special meeting to be held on
April 28th.   At that meeting a resolution was offered to
appropriate $2,500 for purchasing a lot and erecting and
furnishing a school house.   This resolution was rejected.
Then followed the call, by order of the trustees, for the meet-
ing of May 17th, at which the resolutions now attacked were
passed.

I am unable to perceive any invalidity in the call for the
last meeting for the reasons urged by the counsel for the prose-
cutors.   There is nothing in the statute to prevent a new call
for a reconsideration of any question passed upon by a pre-
ceding meeting.   It was held, in the case of *The State, Trustees
of School District No. 4 of Eatontown, pros.,* v. *Lewis, Collector,*
6 *Vroom* 377, that a special meeting may vote to raise money,
although the same proposal had been adversely considered at

the annual meeting in the same year.    The same rule would apply to the power of a special meeting to reconsider any proposal which had been adversely considered at any previous special meeting.    Nor were the matters under consideration at these meetings strictly identical in their purpose.    The proposal to purchase land in the first notice and its absence from the second constitutes a sufficient element of difference between the two objects to relieve the second call of the charge of being an abuse of discretion.

It is, secondly, contended, that it required a majority of the taxable voters of the district to attend the meeting, and that there were not that number in attendance.    This contention seems to be a mistake, for I find no such requirement in the statute, except when there is a resolution to be acted upon looking to the appropriation of money for the purchase or condemnation of land.    The eighty-sixth section of the School law (*Rev.*, *p.* 1085) authorizes the inhabitants of a school district to act by a vote of a majority of the legal voters present. The act of 1880 (*Pamph. L.*, *p.* 225, § 1) made it lawful for any school district, at their annual meeting, to vote money to build a school house as money is now voted, and to provide land for that purpose, not exceeding five acres, at such place in the said district as the school trustees thereof may designate, and for that purpose the said school trustees may acquire the said land, by purchase or condemnation, provided a majority of the taxable residents of said school district shall be present at any meeting as aforesaid, and shall vote on a proposition presented for the selection of a place, and vote money as aforesaid.    In the case of the *Point Pleasant Land Company* v. *Trustees*, 18 *Vroom* 235, it was held that this act of 1880 so far modified the eighty-sixth section of the School law as to make the presence of a majority of the taxable residents of a school district necessary to authorize a meeting and vote money to buy land for school purposes, or to build a new school house.

In 1886 (*Rev. Sup.*, *p.* 930), an act was passed amending section 1 of the act of 1880, so that it thereafter read : " That

it shall be lawful for any school district of this state, at their annual meeting, to vote money to build school houses as money is now voted, and to provide land for that purpose, not exceeding five acres, at such place in such district as the said school trustees thereof may designate, and for that purpose the said school trustees may acquire the said land, by purchase or condemnation, provided that a majority of the taxable residents of said school district shall be present and vote on a proposition for the condemnation of land in accordance with the provision of this act."

It is observable that the difference between the act of 1880, as it stood originally, and as it stands after amendment, is in the proviso, the amendatory act requiring a majority of the taxable residents to vote only upon a proposition for the condemnation of land. The amended act of 1886 entirely superseded section 1 of the act of 1880, and leaves the eighty-sixth section of the School law operative upon all propositions at any school meeting except that for the condemnation of land, which falls under the proviso of the act of 1886. An act passed in 1888 (*Pamph. L., p.* 93) further amends section 1 of the act of 1880, by extending its provision to special meetings of school districts, and slightly changing its phraseology. This act provides, that it shall be lawful for any school district of this state, at their annual meeting, or at a special meeting called for that purpose, upon legal notice, to vote money for the purchase or acquirement of lands and the construction of a school house, or for the purchase or acquirement of additional land to increase the present school grounds of said district, at such place in said district as the school trustees may designate, and for that purpose the said school trustees may acquire the said land, by purchase or condemnation, provided a majority of the taxable voters of said school district shall be present at any meeting and shall vote on any proposition presented for the condemnation of land. This act, like the preceding, restricts the requirement of a vote of a majority of the taxable voters to a proposition for the condemnation of land. Upon all other propositions, the eighty-sixth section of the

general act controls, and a majority vote of those present is sufficient.

It is next insisted, that the resolutions passed at this meeting were so uncertain as to be invalid. The first ground of alleged uncertainty is, that the amount to be raised for building a school house and for furnishing it, is lumped. It is insisted that a separate amount should have been indicated for each purpose. In support of this position, the case of *The State, Barnhart, pros.,* v. *Sullivan,* 7 *Vroom* 89, is cited, in which case it was held, that a certificate which stated that a single sum had been appropriated to procure lands and erect a school house thereon, was defective in failing to show how much was to be applied for each purpose. The two objects upon which the expenditure was to be made in that case rendered it espe-cially important to the taxpayer that he should know what amount was to be applied to the purchase of land and what to the erection of the house. But I do not see the propriety, in this case, of holding to the strictness of specification which the prosecutor now demands. Certainly the case cited does not require it. The furnishing of a school house is an essen-tial part of its construction. Fixed desks, blackboards, are a part of every modern school room, and would seem to require a specific appropriation no more than the foundation, roofing, plastering, scroll or other ornamental work which are parts of every structure. I think the object of the appropriation is sufficiently explicit.

It is again claimed, that there is an uncertainty whether the voters intended the entire $2,000 to be raised by tax within the year, or whether it should be partly postponed to future years. The intention of the meeting seems to be entirely clear. The motion was to raise $2,000. No time was men-tioned for the assessment of this sum in the amendment, but on the heels of this resolution, a motion was made to issue four bonds, which was followed by an amendment to issue three bonds—$500 payable January 1st, 1889 ; $500 January 1st, 1890, and $1,000 January 1st, 1891. This amendment was carried. The money was to be raised by the issuance of

bonds in accordance with this resolution, and the bonds were to be paid in pursuance of the directions of section 89 of the School law.   *Rev., p.* 1086.   The certificate, which directed the whole amount in one year, is clearly illegal.

It is lastly insisted, that the resolution to sell the old school house and apply the proceeds to the payment of the last bond was not in pursuance of the notice.   I incline to the opinion that this is so.   The retention of the old school house for school purposes, or for use as an adjunct of the new structure, may have been an important question, and if so, the purpose to sell should have been incorporated in the notice.   This part of the proceedings of the meeting should be set aside. The remaining resolutions should stand.   The certificate to the assessor, as already remarked, is invalid, and should be set aside.