ISAAC KANDAR v. AETNA INDEMNITY CO.

1. PLAINTIFF NEED NOT ANTICIPATE ADVERSARY'S DEFENSE.
    Where, in an action on an insurance policy, the plaintiff has been released from the performance of any of the conditions in the contract, he should aver such facts in his petition; but matters of a purely defensive nature need not be met earlier than at the filing of the reply.
    [For other cases in point, see 6 Cyc. Dig., "Pleadings," §§ 342-356.—Ed.]

2. INSURANCE COMPANY ESTOPPED TO DISPUTE ACTS OF AGENT IN TAKING APPLICATION FOR INSURANCE.
    Where the agent of the company, in filling out the application for a policy of insurance against loss by burglary or larceny, construes a certain question asked of applicant, to suit the circumstances of the particular case, he acts for the company; and such company cannot escape liability on the policy on the ground of the incorrectness of a statement in the application, based on a contrary construction.
    [For other cases in point, see 5 Cyc. Dig., "Insurance," §§ 669-703.—Ed.]
    [Syllabus approved by the court.]

ERROR to Lucas common pleas court.

**Chittenden & Chittenden,** for plaintiff in error.

**Southard & Southard,** for defendant in error:

Cited and commented upon the following authorities: *Travelers Ins. Co.* v. *Myers,* 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760]; *Union Central L. Ins. Co.* v. *Hook,* 62 Ohio St. 256 [56 N. E. Rep. 906]; *Eureka Fire & M. Ins. Co.* v. *Baldwin,* 62 Ohio St. 368 [57 N. E. Rep. 57]; *Northern Assur. Co.* v. *Building Assn.* 183 U. S. 308 [22 Sup. Ct. Rep. 133; 46 L. Ed. 213]; *Gould* v. *Insurance Co.* 90 Mich. 302 [51 N. W. Rep. 455]; *Quinlan* v. *Insurance Co.* 133 N. Y. 356 [31 N. E. Rep. 31; 28 Am. St. Rep. 645]; *Pete* v. *Woodmen of the World,* 26 O. C. C. 653; *Hollis* v. *Insurance Co.* 65 Iowa 454 [21 N. W. Rep. 774]; *Barre* v. *Insurance Co.* 76 Iowa 609 [41 N. W. Rep. 373]; *Wadhams* v. *Insurance Co.* 117 Mich. 514 [76 N. W. Rep. 6]; *Kirkman* v. *Insurance Co.* 90 Iowa 457 [57 N. W. Rep. 952; 48 Am. St. Rep. 454]; *Carey* v. *Insurance Co.* 84 Wis. 80 [54 N. W. Rep. 18; 20 L. R. A. 267; 36 Am. St. Rep. 907]; *Walsh* v. *Insurance Co.* 73 N. Y. 5; *Insurance Co.* v. *Pyle,* 44 Ohio St. 19 [4 N. E. Rep. 465; 58 Am. St. Rep. 781].

Materiality of representations. *Deming Invest. Co.* v. *Insurance Co.* 16 Okla. 1 [83 Pac. Rep. 918; 4 L. R. A. (N. S.) 607].

**WILDMAN, J.**

This is a proceeding in error to reverse the action of the court of common pleas in sustaining a demurrer to the amended reply of the plaintiff and rendering judgment for the defendant on the pleadings. The case below was one instituted by the plaintiff in error, Kandar, upon a policy of insurance issued by the defendant company to indemnify Kandar against loss by reason of burglary, theft or larceny of property of certain classes described in the policy. Among the claims asserted in the answer is one embodied in what is called the second defense. It is properly the first defense, because the matters treated of in the so-called first defense are merely admissions and denials of the averments in the petition. This so-called second defense asserts, in substance, that a certain misrepresentation was made by the insured in the application for the policy, or, what is equivalent thereto, perhaps, in a certain "schedule" containing a number of statements, not signed by the insured but attached to the policy itself. The policy purports to be issued in consideration of $12.50 premium "and of the statements in the schedule hereinafter contained, which statements the assured makes on the acceptance of this policy and warrants to be true." The particular statement embodied in the schedule and referred to as No. 6, reads:

"The assured has never suffered loss by burglary, theft or larceny either at the premises above described or elsewhere, nor received indemnity therefor except as herein stated."

There is a clause, No. 16, not in the schedule, but in the body of the policy, reading as follows:

"No agent has authority to change this policy or to waive any of its provisions nor shall any notice to the agent or knowledge of his or any other person be held to effect a waiver or change in this contract or in any part of it."

Relying upon these provisions in the policy, the defendant in the so-called second defense, alleges that it was not true that the plaintiff had never before had any property stolen from him, but, on the contrary, that some time in the year 1901, he had suffered loss by burglary, theft and larceny at his warehouse at the corner of Short and Huron streets, in the city of Toledo, Ohio, "at which time persons unknown to defendant broke into and entered the said warehouse of plaintiff, and then and there did steal," certain property mentioned. The property claimed by the plaintiff to have been stolen and for the loss of which he sought this indemnity on the policy, was a certain diamond ring of the value, as claimed by the petition, of $450, which was stolen from some room in the residence of the plaintiff in the city of Toledo. The

Lucas County.

amended reply of the plaintiff, to which demurrer was interposed and sustained, is, so far as relates to this inquiry, as follows:

"For reply to the second defense in defendant's answer, plaintiff states that he did not read the questions contained in the application for policy of insurance mentioned in the petition, but that the questions were asked him by the agent of the defendant and that said agent inquired of plaintiff only as to any previous burglary, theft or larceny that plaintiff may have had in his residence, and said agent assured said plaintiff that it was only necessary for defendant to know as to whether or not any burglary, theft or larceny had been suffered by plaintiff in his residence, and plaintiff denies each and every allegation contained in said second defense conflicting with the foregoing allegation."

The defendant contends that this is no reply; that it does not legally meet the defense asserted; and it is suggested to the court also, by counsel for defendant in error, that this claim in the reply amounts to a waiver of the conditions of the policy and that it should have been asserted, if proper at all, in the petition rather than in the reply. With this latter claim we are not in accord. It is not a waiver of some condition to be performed; not a waiver of some requirement on the part of the plaintiff, but it is a matter rather of claimed estoppel to assert the defense which is alleged in the answer. The answer asserts that the plaintiff is not entitled to the relief which he seeks because of the incorrectness of a representation made to the company upon which it based its action in issuing this policy; and the plaintiff attempts to meet this claim by saying that the defendant company had knowledge of these facts; that it did not need to rely upon any representations made by the plaintiff to it or to its agent; in other words, that the company had this knowledge and the agent of the company having placed a construction upon what may possibly be an equivocal or ambiguous clause in its schedule attached to the policy, is estopped now to dispute that construction. We think it altogether true that when a plaintiff is suing upon a policy and is seeking to avoid the performing of some condition precedent, or subsequent, obligatory on him, he should assert the facts in his petition which release him from the performance of such obligation. As, for instance, concerning the requirements as to proofs of loss and payment of premium, if for any reason he has been released from such requirements, he should aver such fact in his petition and he could not meet the obligation resting upon him so to plead by asserting that he had performed all the conditions precedent. A waiver of performance is not the same thing as performance. But he was not bound to anticipate here the assertion of this defense. The claim asserted by the defendant is purely defensive, and for that reason the plaintiff was

not compelled to meet it at any earlier stage of the proceedings than the filing of his reply.

Revised Statute 3644 (Lan. 5855), having reference to insurance companies other than life, provides that:

"A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding."

In the policy before us there is no provision that the solicitor for the insurance shall not be deemed the agent of the company, or that he shall be deemed the agent of the insured; but it is perhaps not necessary to invoke the aid of the statute in behalf of the plaintiff here, in view of the fact that this question arises upon a demurrer which concedes the truth of the allegations properly made in the reply, and the reply nowhere says that the person placing this construction upon the schedule was merely a soliciting agent, but the language is, that the questions were asked him by the agent of the defendant "and that said agent inquired of plaintiff only as to any previous burglary, theft or larceny that plaintiff may have had in his residence, and said agent assured said plaintiff that it was only necessary for defendant to know as to whether or not any burglary, theft or larceny had been suffered by the plaintiff in his residence;" and he further avers that "at the time of writing said application and policy of insurance defendant had full knowledge that plaintiff had suffered loss by theft and larceny at his place of business." We must then take it for granted that these statements were made by the agent of the company; that he had knowledge of the fact of a previous larceny of the plaintiff's property, and, possibly of the further fact that the company itself had such knowledge, as averred in the reply, treating all of these allegations as conceded by the demurrer to be true. But in view of the probability that in the drafting of this pleading, counsel meant no more than this, that the company had constructive knowledge, or that knowledge which they were bound to have by reason of the communication of facts to their agent, or knowledge possessed by the agent, it is well enough to consider what is the law applicable to such condition.

Reliance is placed by counsel for defendant upon two cases, *Union Cent. Life Ins. Co.* v. *Hook*, 62 Ohio St. 256 [56 N. E. Rep. 906], and *Travelers' Ins. Co.* v. *Myers*, 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760]. One of these is a life insurance case and the other an insurance against liability to employes who sustain bodily injury while on the pay roll of the insured. In the case of *Union Cent. Life Ins. Co.*

Lucas County.

v. *Hook, supra,* page 256 of this report, it was held, as stated in the first syllabus:

"In an action to recover on a written contract for life insurance and upon an alleged subsequent verbal modification of the same, statements and representations made by the agent who solicited the policy, prior to, and contemporaneous with, the issue of the policy, are inadmissible to vary, in any respect, the terms of the written policy. In the absence of proof of fraud or mistake, such statements and representations are merged in the written contract."

The verbal representation which was relied upon in the Hook case was one which it was claimed extended the policy one year and waived the payment of an annual premium. These were changes which, under the terms of the policy, could not properly be made by an agent of the company nor could they be proven by parol; but Judge Davis, who rendered the opinion in the case, says, on ·page 265:

"We do not decide that there might not be an estoppel by conduct, notwithstanding such an agreement. But that case does not arise here."

The other case, *Travelers' Ins. Co.* v. *Myers, supra,* provides, as we read in the third syllabus:

"When such policy contains a stipulation that 'No agent has authority to waive or alter anything in this policy contained,' and the same is accepted by the insured, it is both notice to, and an agreement by, the insured that an agent has no authority to waive or alter anything contained in the policy."

We take this to mean that the agent has no authority to change the contract, but that is not inconsistent with the view that the company may, under certain circumstances, be estopped by its own conduct, from asserting some matters of defense. The question is, whether the matter which we have here is one which might be covered by that principle. Counsel for the plaintiff in error urge as a proper construction of the policy that the term "elsewhere" as found in the schedule, is to be construed as meaning other premises on which the insured has resided, or something equivalent to that, and considerable support is found for this contention in some of the cases, notably *State* v. *Clark,* 52 N. J. Law 291 [19 Atl. Rep. 462].

It is insisted that the case falls within the principle wherein the courts have held that when certain articles or certain places are enumerated and then some general word is used following the conjunction "or," this general term is to be treated as *ejusdem generis;* that is to say, of the same kind or class, as the articles, or places just mentioned. Here the statement is, in substance, that the assured has not suffered loss by burglary, theft or larceny either at the premises above described

Kandar v. Indemnity Co.

or "elsewhere;" and it is very earnestly urged that the word "elsewhere" does not mean anything more than some other premises in their general nature like those already described. Perhaps in the construction of this phrase, however, we should consider the purpose of this stipulation. What was the object of the insurance company in asking for such information? We think it altogether likely that the company designed to ascertain whether the person seeking insurance was careless as to the protection of his property—one who would be likely to leave it unguarded or put it in such place or places that it might tempt others to larceny or burglary—and perhaps with that thought, it might not make very much difference whether the prior theft was one from the residence or whether it was one from the warehouse.

It may safely be said that the most that can be claimed by either of the parties to the controversy is, that the phrase is somewhat ambiguous; that it is not free from doubt as to its construction. Now, if that be so, a second inquiry becomes altogether pertinent: What is the effect of the phrase or rather, the construction put upon it by the agent of the company at the time when the question is asked and the answer given? And the further question as a corollary to that: If the agent of the company placed a construction upon it, making the answer given an honest one, is the company bound by it so as to be thereafter estopped from asserting as a defense to an action on the policy that a false representation had been made in this regard? We are not without authorities upon questions somewhat analogous. We have found reference to a mass of litigation along the same lines in *Clemans* v. *Supreme Assembly,* 16 L. R. A. 33 [131 N. Y. 485; 30 N. E. Rep. 496] *et seq.* On page 35 is a reference to a case, *Texas Mut. L. Ins. Co.* v. *Davidge,* 51 Tex. 244:

"The knowledge of the agent of the misrepresentations upon which the insurance was procured must be pleaded in reply if it is intended to rely thereon to defeat the defense based on such misrepresentations."

That is precisely the course that was taken by the plaintiff in error here.

"If the insurer's agent after being informed fully as to the facts incorrectly states them in the application, the insurer is estopped to take advantage of the error to avoid liability on the policy." *North American Fire Ins. Co.* v. *Throop,* 22 Mich. 146 [7 Am. Rep. 638].

Numerous other cases are cited in a somewhat extensive paragraph, which include some cases in New York. On the same page is this:

"If the statements in the application relied upon as breaches of warranty are inserted by the agent of the insurer, without collusion or fraud on the part of the insured, the insurer is estopped to set up their error or falsity." *Baker* v. *Insurance Co.* 64 N. Y. 648, and other cases.

Lucas County.

I invite attention to these merely because of their treatment of this sort of a claim as a claim of estoppel, which is recognized by Judge Davis as already quoted in *Union Cent. Life Ins. Co.* v. *Hook, supra,* as not inconsistent with the conclusion arrived at in that case.

On page 37 is cited the case of *Key* v. *Insurance Co.* 77 Iowa 174 [41 N. W. Rep. 614]:

"An insurance company whose agent himself prepared an application with knowledge of the fact that the insured had only a title bond for his land, which was not paid for, cannot defeat an action on the policy on the ground that the application improperly states that the insured was the sole and undisputed owner of the property, and that it was unincumbered, where this was signed by the insured after making a full statement of the facts, in accordance with the agent's theory of his title."

There was a case where the agent seems to have put a construction upon the facts which was adopted by both the agent and the insured and the insured made the application and signed it. And again, on page 38, citation is made of the case of *Equitable Life Ins. Co.* v. *Hazlewood,* 75 Tex. 338 [12 S. W. Rep. 621; 7 L. R. A. 217; 16 Am. St. Rep. 893]:

"A former rejection of the insured on his application to a legion of honor is not a breach of a warranty that he had never applied for insurance in any other company, when the agent told him that a legion of honor was not an insurance company."

Just as here, where he claims the agent told him that this clause "elsewhere" had reference only to other residences formerly occupied by him and not to a warehouse. The case of *Continental Life Ins. Co.* v. *Chamberlain,* 132 U. S. 304 [10 Sup. Ct. Rep. 87; 33 L. Ed. 341], is also mentioned. I have the case before me, but I will not stop to read from it. The annotation in *Clemans* v. *Supreme Assembly, supra,* page 38, is as follows:

"Where the agent writes in the application that the applicant has no other insurance, although the applicant told him that he had certificates of membership in co-operative companies, which the agent said were not considered insurance by him, the company is bound by the agent's interpretation, and estopped from asserting the contrary."

That case seems to be pretty close to the case at bar, and, being a decision of the Supreme Court of the United States, is, of course, entitled to the highest respect. It was the unanimous expression of that court.

In our own state we have, among other cases, that of *Insurance Co.* v. *Williams,* 39 Ohio St. 584 [48 Am. Rep. 474]. This was not a life

Kandar v. Indemnity Co.

insurance case, so as to be affected by the express provisions of the section in our statutes as to life insurance companies, but it was embraced in a class of insurance other than life insurance.

The syllabus of the case is as follows:

"A soliciting agent, procuring for an insurance company risks and applications on which policies are issued, who fills up the application, is, in so doing, the agent of the company, and not of the insured; and if the agent make a mistake in wrongly stating facts which were correctly given him by the insured in preparing the application, the company is bound by, and responsible for, such mistake."

Judge Follett quotes, on page 588 of his opinion, from the case of *Combs* v. *Insurance Co.* 43 Mo. 148, 149 [97 Am. Dec. 383], which is the language of the supreme court of that state:

" 'The authority of the soliciting agent of an insurance company to take applications for insurance carries with it the legal implication of authority to fill up the application, and do all those things which may be needful in perfecting it.' "

And then Judge Follett adds:

"That was a case sought to be defeated on the ground of false representations and warranties in the application. Here the agent wrote the application, and was given a correct description and told to write it in the application, and by mistake did not do it."

He refers also to the case of *Rowley* v. *Insurance Co.* 36 N. Y. 550, in which the court say, page 589:

" 'An agent, authorized to take applications for insurance, should be deemed to be acting within the scope of his authority, where he fills up the blank application of insurance; and if, by his fault or negligence, it contains a material misstatement not authorized by the instructions of the party who signs it, the wrong should be imputed to the company, and not to the insured.' "

Numerous other authorities are cited from the state of New York showing that the result of the adjudications in that state is not inconsistent with the conclusion of the court in *Insurance Co.* v. *Williams, supra,* and the application of the principle of estoppel.

Judge Follett also cites *Union Mut. Life Ins. Co.* v. *Wilkinson,* 80 U. S. (13 Wall.) 223 [20 L. Ed. 617], where the Supreme Court say:

" 'Hence, when these agents in soliciting insurance, undertake to prepare the application of the insured, * * * they will be regarded, in doing so, as the agents of the insurance companies, and not of the insured.' "

Other cases are cited, including the case of *Massachusetts Life Ins.*

*Co.* v. *Eshelman,* 30 Ohio St. 647, in which our own Supreme Court commission held:

" 'A subagent of a life insurance company appointed to represent it in a particular branch of its business, becomes, in reference thereto, the direct representative of the company, and notice of a fact to him will operate as notice to the company, and it will be bound by acts done by him in respect to that branch of its business intrusted to him.' "

Then Judge Follett concludes with this paragraph:

"As showing this to be the policy of our law, we now have a statute going much beyond this case, passed March 5, 1879, and is now Sec. 3644 [Lan. 5855] Rev. Stat. reading: 'A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party hereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding.' "

That section, as cited by Judge Follett, has undergone slight changes in arriving at the condition in which we find it embodied in our present revision. The changes are immaterial so far as this answer is concerned. As suggested by my associate, Judge Parker, the Supreme Court in this case of *Insurance Co.* v. *Williams, supra,* is basing its conclusion not upon Rev. Stat. 3644 (Lan. 5855), which was passed after the rights of the parties had accrued, but Judge Follett cites the section merely as showing the tendency of our legislation. In reference to this section of the statute, it is manifest that the legislature had some purpose in enacting that the soliciting agent should be deemed, under such circumstances, the agent of the company, although so far as the terms of the legislation go there is nothing further. The purpose of the section is its application as fixing the rights and liabilities of the insured and the insurer. It must be, that the legislature in enacting that the soliciting agent under certain circumstances, shall be deemed the agent of the company, intends that he shall have power to bind the company as its agent to some extent, and we think that the statute was passed in recognition of the general practice of agents of receiving the statements of claimed facts from persons whom they were seeking to insure and embodying them in applications for insurance or in such schedules perhaps as we find here, attached to this policy.

I find that our own court has had occasion to look somewhat into this question and to pass upon the principle in the case of *Phoenix Mut. Fire Ins. Co.* v. *Bowersox,* 3 Circ. Dec. 321 (6 R. 1). I read the fifth paragraph of the syllabus:

"Where the agent of an insurance company, in taking an application for insurance against loss by fire, himself writes out the answers of

Kandar v. Indemnity Co.

the applicant to interrogatories propounded in behalf of the company, he acts, in that regard, as the agent of the company; and if any mistake occurs in writing out such answers, such as an excessive estimate of value, based on the truthful statements of the assured, without fault on the part of the assured, the latter is not prejudiced thereby.''

The members of the court at the time this decision was rendered, in 1901, were Judges Haynes, Bentley and Scribner, and the opinion is *per curiam*, all of the judges indorsing not only the judgment which was rendered, but the entire phraseology of the opinion. I will not stop to read from this opinion, but will say only that it fully sustains the proposition in the syllabus which I have already read. It is suggested to me, and before leaving the discussion of the subject I will say that the provision in our present revision, Rev. Stat. 3644 (Lan. 5855), has application to all insurance companies other than life. When originally enacted as a part of the Holland law it had reference to fire insurance companies only, but it is now embodied in the chapter pertaining to insurance companies other than life, and in another part of the same chapter we find provision for insurance companies of the class represented by the defendant in this suit; that is, insurance against losses by crimes such as burglary, theft, larceny, etc. The case of *Phoenix Fire Ins. Co.* v. *Bowersox, supra,* received consideration by another court higher than the circuit court; it was carried to the Supreme Court and the entry on the docket of the Supreme Court shows that it was dismissed March 21, 1893, so that the last judicial determination of the matter, so far as that case is concerned, is embodied in the decision as quoted. There is an earlier case in Ohio to which reference might be made: *Hartford Protec. Ins. Co.* v. *Harmer,* 2 Ohio St. 452 [59 Am. Dec. 684], in which it was held, in the sixth paragraph of the syllabus:

''If a representation is untrue as to incumbrances, but not fraudulently made, and the agent of the company knows the true state of facts, and writes the statement as made from his own knowledge, and fails to state it truly, such misrepresentation will not avoid the policy, and this is true, although the statement is signed by the agent of the insured.''

In the so-called second defense in this answer there is perhaps a substantial averment of fraud on the part of the plaintiff; that is, an allegation that he knew the statements to be false; but that part of the answer is denied by the reply. The plaintiff does not mention it specifically, but he denies all matters antagonistic to, or inconsistent with, the statements made in the reply including the statement that the defendant's agent and the defendant had full knowledge of all the facts. We think that there is enough in the reply, to carry to the mind of any reader an understanding that the plaintiff is asserting that the defend-

ant company was not misled by any language in this schedule negativing a previous larceny in his residence or elsewhere, and that plaintiff made the statement in good faith.

Our judgment is, that the demurrer should have been overruled, and that the court, in sustaining it, committed error; that the court also erred in dismissing plaintiff's case upon the pleadings. For these errors the judgment of the court will be reversed and the cause remanded, with instructions to overrule the demurrer and for such further proceedings as may be required.

**Haynes** and **Parker, JJ.,** concur.