## GULF OIL CORPORATION v. LASTRAP et al.

Civ. No. 928.

District Court, S. D. Texas, Houston Division.

Feb. 6, 1943.

Jno. E. Green, Jr., W. D. Caldwell, and Rufus J. Lackland, all of Houston, Tex., for plaintiff.

H. E. Kahn and Cedric O. Taylor, both of Houston, Tex., for defendants Mrs. Lillian Easton Lastrap et al.

Mandell & Wright, of Houston, Tex. (by Arthur J. Mandell, of Houston, Tex.), for defendant Miss Ida Guss.

KENNERLY, District Judge.

Moving under Presidential Order, dated December 19, 1941,[1] creating the Maritime War Emergency Board, and under Decisions of such Board with respect to insurance for seamen,[2] plaintiff, a Pennsylvania corporation engaged in the production, refining, distributing, and marketing of petroleum oil and its products, and in connection therewith owning and operating a number of ocean-going tank vessels, made provision for the insuring of members of the crews of its vessels, including each of its seamen, in the amount of $5,000, against loss of life due to risks of war or warlike operations. It also made provision for the payment for the loss of the personal effects of seamen, in accordance with Decision No. 3,[3] and the Clarification of Decision No. 3.[4]

Lucius Joseph Lastrap, Jr., a citizen of the United States, a citizen and resident of Texas, and a seaman and member of the crew of the Steamship "Gulf America", lost his life by the sinking of such vessel on or about April 10, 1942, leaving in full force and effect such life insurance in the sum of $5,000 and such personal effects insurance in the sum of $150. Plaintiff also owed him at that time wages in the sum of $26.74.

Following the death of such seaman, plaintiff brought this interpleader suit,

[1] "December 19, 1941. Pursuant to the agreement reached on December 19, 1941, between representatives of the maritime industry and the labor organizations involved, and in accordance with their joint request that a Board to expedite and co-ordinate the war efforts of the maritime industry be appointed, I hereby designate: John R. Steelman of the U. S. Department of Labor, Edward Macauley, of the U. S. Maritime Commission, and Frank P. Graham, President of the University of North Carolina, to serve as members of this Board. The Board shall be known as the Maritime War Emergency Board and its powers and purposes shall be those set forth in accordance with Exhibit 'A' of the agreement referred to above."

[2] Decision No. 1 with respect to such insurance is in part as follows: "The Maritime War Emergency Board ruled on December twenty-second at 11:50 PM 'Effective immediately and pending further consideration and decision by the Board each member of the crew of any merchant vessel documented under the laws of the United States and covered by the statement of principles pursuant to which the Board has been established, including such vessels now at sea, shall be insured against loss of life due to risks of war or warlike operations in the amount of $5,000 on all voyages'" etc.

Supplement to Decision No. 1 is in part as follows: "Payees. All payments provided for herein will be made only to the master, officer, or member of the crew concerned, except that a payment for loss of life will be made to the beneficiary designated by the master, officer or member of the crew at the time he signs on. The appearance of the name of such a beneficiary upon a copy of the signed beneficiary list or individual beneficiary designation, attested by the shipowner, shall be conclusive evidence of such designation and payment to such named beneficiary shall thereby entirely discharge Assurer's liability with respect to such loss. In the absence of such designation of named beneficiary, payment will be made as follows: If the deceased master, officer or member of the crew concerned appears upon the articles as an American citizen, payment will be made to the executor or administrator in the United States of said master, officer or member of the crew for distribution in the same manner as his estate;" etc.

[3] Decision No. 3 is in part as follows: "In the event of total loss of or damage (equivalent to total loss) to the effects of any licensed officer or unlicensed member of the crew resulting from risks of war or warlike operations, such officer or crew member shall be paid, as reimbursement for such loss or damage, (i) if a licensed officer, the sum of $300, (ii) if an unlicensed member of the crew (including department heads) receiving a basic wage in excess of $120 per month, the sum of $250, and (iii) if an unlicensed member of the crew (including department heads) receiving a basic wage of $120 per month or less, the sum of $150."

[4] The Clarification of Decision No. 3 is in part as follows:

"The Board has ruled that the provisions for payment for loss of personal effects are property insurance and therefore the claim survives the death of the seaman.

"Payment should be made in the order prescribed in Payee clause of Decision No. 1 and supplement thereto."

alleging that it had in its possession such sum of $5,000, such sum of $150, and such sum of $26.74 (totaling $5176.74), which it has paid into the Registry of the Court, and that defendant Ida Guss, of Galveston County, Texas, was named by deceased as his beneficiary to receive such life insurance and such personal effects insurance, that defendant Lillian Easton Lastrap, of Galveston County, Texas, is the surviving wife and administratrix of deceased and guardian of his three minor children, and that there is a dispute between such defendants as to whether such sums of money should be paid to Ida Guss or to Lillian Easton Lastrap. It prays that the Court decide which of the two shall receive such insurance and such wages.

There is no attack by either party on the Order of the President nor the Decisions of such Emergency Board, but in her amended answer, filed January 25, 1943, Lillian Easton Lastrap says: "They do not know, except what is alleged in plaintiff's petition, as to Ida Guss being named as beneficiary; but these defendants allege that if Ida Guss is named as beneficiary, as alleged in complaint herein, then and in that event, these defendants say that Ida Guss *has no insurable interest in the life of the deceased, Lucius Joseph Lastrap, Jr., under the laws of Texas,* and therefore, the insurance carried on the life of the deceased legally goes to the nearest of kin, to-wit, the defendants filing this answer."

Such amended answer contains other similar allegations.

Prior to the filing of defendant Lastrap's amended answer, the defendant Ida Guss had moved to strike portions of her answer, which motion to strike has been treated by the parties and by the Court as a *motion to strike* that portion of defendant Lastrap's amended answer which sets forth that under the Laws of Texas, Ida Guss had no insurable interest in the life of the deceased.

This is a hearing of such motion to strike.

■ 1. The holding of the Texas Courts with respect to an insurable interest is well stated by the Texas Commission of Appeals in Wilke v. Finn, 39 S.W.2d 836, 837. It is there said: "In some jurisdictions it is held that every person has an insurable interest in his own life, and that he may insure it for the benefit of any person whom he sees fit to name as beneficiary, irrespective of whether such beneficiary has an insurable interest in his life or not (14 R.C.L. p. 920), and it was so contended in Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S.W. 621, 625, 7 L.R.A. 217, 16 Am.St.Rep. 893, but this is not the rule in this state. Our courts have uniformly held that it is against the public policy of this state to allow one to be the owner of a policy of insurance upon the life of a human being in whom he has no insurable interest."

■ Invoking this rule and the rule laid down in Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Id., 5 Cir., 123 F.2d 550, defendant Lastrap insists that defendant Guss had no insurable interest in the life of the deceased, and that, therefore, she cannot recover deceased's life insurance and personal effects insurance in the Registry of the Court. But not so. Deceased's insurance did not result, as the insurance did in the cases cited, from the voluntary act of the parties, but resulted from provision made by the United States Government for seamen. Having in mind the wartime dangers to which seamen are exposed, the Government, moving under its Constitutional powers with respect to Admiralty and Maritime matters[5] and various Acts of Congress[6], made provision for this insurance for seamen just as it made provision for seamen by the Jones Act, 46 U.S.C.A. Section 688, and many other similar Acts of Congress. And these provisions for seamen, all of which are rooted in the provisions of the Constitution giving to the Federal Courts Admiralty and Maritime Jurisdiction, are uniformly construed and enforced without reference to State Statutes or State Court Rulings. Perhaps the latest expression upholding this view is Garrett v. Moore-McCormack Co., 63 S.Ct. 246, 250, 87 L.Ed. ——, decided December 14, 1942. There the Supreme Court had under consideration a suit brought in a State Court for damages, etc., under the Jones Act. It is held in effect that such Act is to have a uniform application throughout the country, and that the Laws of the State and Decisions of the State Courts are not controlling. It is there said (italics mine):

---

[5] Article III, Section 2 of the Constitution.

[6] Titles 33, 46, etc., U.S.C.A.

"This Court has specifically held that the Jones Act is to have a uniform application throughout the country unaffected by 'local views of common law rules.' Panama R. Co. v. Johnson, 264 U.S. 375, 392, 44 S.Ct. 391, 396, 68 L.Ed. 748 [755]. The Act is based upon and incorporates by reference the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which also requires uniform interpretation. Second Employers Liability Cases (Mondou v. New York, N. H. & H. R. Co.), 223 U.S. 1, 55 et seq., 32 S.Ct. 169, 177, 56 L.Ed. 327 [348], 38 L.R.A.,N.S., 44, [1 N.C.C.A. 875]. This uniformity requirement extends to the type of proof necessary for judgment. New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167.

*"In many other cases this Court has declared the necessary dominance of admiralty principles in actions in vindication of rights arising from admiralty law.* Belden v. Chase, 150 U.S. 674, 14 S.Ct. 264, [269], 37 L.Ed. 1218, an 1893 decision which respondent relies upon as establishing a contrary rule, has never been thus considered in any of the later cases cited.

"It must be remembered that the state courts have concurrent jurisdiction with the federal courts to try actions either under the Merchant Marine Act or in personam such as maintenance and cure. The source of the governing law applied is in the national, not the state, governments. If by its practice the state court were permitted substantially to alter the rights of either litigant, as those rights were established in federal law, the remedy afforded by the state would not enforce, but would actually deny, federal rights which Congress, by providing alternative remedies, intended to make not less, but more secure. The constant objective of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded them by the jurisdiction in which the right itself originates."

It is perfectly plain that the right to the insurance on the life and the personal effects of the deceased is a right bottomed on the Admiralty and Maritime Laws of the United States, which may not be altered, affected, or controlled by the Laws of Texas or the Ruling of Texas Courts.

It follows that defendant Guss' motion to strike should be sustained.