**PAINTER et al. v. SOUTHERN TRANSP. CO.**

Civ. Nos. 318, 319, 320.

United States District Court, E. D. Virginia, Norfolk Division.

June 10, 1948.

R. Arthur Jett, of Norfolk, Va., for plaintiffs.

Leon T. Seawell, of Norfolk, Va., for defendant.

HUTCHESON, District Judge.

### Findings of Fact

1. The Maritime Commission and the Department of Labor called a conference held on December 17, 1941, in Washington among representatives of the Government and employees and employers of the steamship industry, for the purpose of undertaking to work out a practical program to insure cooperation between all phases of the industry and the Government to expedite the movement and operation of ships. It is recited that present at the conference were representatives of "all seamen, licensed officers and radio operators unions, longshoremen unions, shipowners associations, steamship operators and other employers of waterfront labor". 1942 A.M.C. 308. There follows a list of twenty-four representatives of labor organizations and steamship companies, to whom the chairman of the Maritime Commission sent invitations to attend the conference Pursuant to the agreement reached on December 19, 1941, "between representatives of the maritime industry and the labor organizations involved, and in accordance with their joint request" the President appointed a board to expedite and coordinate the war efforts of the maritime industry, which board was known as the Maritime War Emergency Board. Its powers and purposes were stated to be those set forth in accordance with Exhibit "A" of the agreement referred to, which exhibit has attached to it the signatures of thirty-six representatives of unions and shipping companies and the Administrator of War Shipping Administration.

The following statement of its powers appears in 1942 A.M.C. 309: "The Board, set up as the result of a petition to the President by the Maritime Labor Conference on December 19, is empowered by agreement reached by employers and employees in the American Merchant Marine, to settle differences that may arise between seagoing personnel and operators of American merchant ships, to establish war areas, and determine a proper uniform basis for payment of war-risk insurance on the lives of crew members and war bonuses to be paid to crews on ships operating in the war areas."

2. On December 22, the Board declared that certain insurance against loss of life due to risk of war should be carried upon each crew member of any merchant vessel documented under the laws of the United States and covered by the statement of principles pursuant to which the Board was established, with certain exceptions not pertinent here, and on December 23 directed that bonus rates be established as promptly as possible.

3. On February 6, 1942, the Board announced a supplement to the decision of December 22, 1941, referring to each member of the crew "covered by the statement of principles pursuant to which the Board was established". It was recited that this decision applies to all parties affected by the previous decision.

4. Under date of February 24, 1942, there was issued an amendment to Decision No. 1, of December 22, providing that effective March 1, 1942, each member of the crews of vessels "covered by the Statement of Principles pursuant to which the Board has been established" should be covered by insurance.

5. Defendant, Southern Transportation Company, a corporation, was not invited to attend the conference of December 17, 1941. It did not attend nor is it a signatory to the Statement of Principles and Exhibit "A", nor has the defendant authorized anyone to act for it in connection with the matters under consideration.

6. Atlantic Coast and Gulf of Mexico Tow Boat Association, of which the defendant was a member at the time, was not invited to attend the conference. It did not attend nor is it a signatory to the Statement of Principles and Exhibit "A".

7. On January 22, 1942, pursuant to inquiry from the defendant of January 9, the Chairman of the Board advised defendant by telegram that the decisions of the Board respecting insurance and war risk compensation were binding only upon signatories to the Statement of Principles and inasmuch as it was not represented at the meeting it was not obligated to abide by the decisions of the Board.

8. Under date of January 31, 1942, the chairman of the Board, by letter, advised the secretary of the defendant that the Board considered compliance with its decisions by those not signatories to the Statement of Principles as not compulsory, but invited attention to the following statement in Decision No. 2: "All owners and operators of the United States flag vessels of the American Merchant Marine and all licensed and unlicensed personnel employed on those vessels are expected to conform to this Decision".

9. In response to telegram dated January 20, the chairman of the Board advised the president of Atlantic Coast and Gulf of Mexico Tow Boat Association that decisions of the Board respecting insurance and war risk compensation were binding only upon signatories to the Statement of Principles and inasmuch as that organization was not represented at the meeting at which the Statement of Principles was adopted, it was not obligated to abide by the decisions of the Board.

10. By an undated release, which was fixed as having been issued prior to January 22, 1942 (transcript page 25), the Board announced Clarifications of Decision No. 2, where it is again stated that the decisions of the Board are binding only upon the signatories, but attention was directed to the foregoing Statement of Decision No. 2, quoted in paragraph 8 hereof.

11. Defendant operated under a contract with the Marine Engineers Beneficial Association, the Masters, Mates and Pilots Association, and with the Seafarers International Union, all of which were invited to attend the conference of December 17, 1941, and all of which were signatories to the Statement of Principles.

12. On March 31, 1942, defendant, Southern Transportation Company, a corporation, owned, operated and controlled the steam tug Menominee, a merchant vessel documented under the laws of the United States. On or about the date last mentioned, while the tug was proceeding along the East Coast of the United States towing certain barges, she was attacked by an enemy submarine and sunk by shell fire. As a result of the attack certain members of the crew, including the intestates of the plaintiffs in the three cases under consideration, lost their lives and personal effects. These actions assert liability against the defendant for the principal sum of $5,000 each as war risk insurance, and for the loss of personal effects, wages and bonus in varying amounts alleged to be due on account of the loss of life mentioned.

13. This Court has held in Norfolk Civil Actions Nos. 315, 316 and 317, 80 F.Supp. 754, that the loss of life of the crew members here involved was caused by the negligence of the defendant for reasons recited in Memorandum Opinion and Findings of Fact and Conclusions of Law filed in those cases.

14. The defendant did not insure or cause to be insured the members of the crew against loss of life due to risk of war-like operations.

## Conclusions of Law

It is contended by the plaintiffs that the actions of the Board appointed by the President, with respect to war risk insurance had the binding force and effect of law and that the defendant was required to insure each member of the crew. Stated somewhat differently, it is the contention of the plaintiffs that the defendant was bound in the same manner and to the same extent as it would have been had it attended the conference or become a signatory to the Statement of Principles.

The plaintiffs refer to the setting up of the Board as the action of the Government under war-time powers and cite the cases of Gulf Oil Corporation v. Lastrap, D. C., 48 F.Supp., 947, and Jones v. Atlantic Refining Company, D. C., 55 F.Supp., 17, in support of their contention. No other cases bearing upon the subject have been brought to my attention.

Upon an examination of the opinions cited, it is readily apparent that the question here involved was not before the Court in either of those cases. The question involved in the Gulf Oil case was whether a beneficiary without insurable interest in the life of the deceased seaman was entitled to recover in preference to one with an insurable interest. In the Jones case the question in issue was whether the verdict of the jury was excessive in the allowance of damages under the Jones Act. Apparently in neither case was any question raised similar to the one now before the Court. It is not clear whether the defendants in those cases were signatories to the Statement of Principles nor whether the vessels were under charter to the War Shipping Administration. It is not necessary to discuss further the difference in the facts, but even a casual examination discloses that neither' of those cases is any authority for the question here in issue.

No applicable legislative act has been brought to my attention, nor have I been able to find one. I have examined the Merchant Marine Act of 1936 with special reference to the sub-division entitled "Insurance", Title 46, Sections 1128–1128h, inclusive, U.S.C.A., and I find nothing there to support the claims here asserted.

In appointing the Board members the President made no reference to any authority conferred upon him either by Congress or by the Constitution. There is no suggestion that the conference was called pursuant to any congressional authority.

While not binding upon the Court, the administrative construction given by those charged with the responsibility of carrying the program into effect may be given weight.

The Board, in its actions and by numerous rulings, apparently recognized the voluntary nature of the obligation of those signatory to the Statement of Principles, although it would appear that in late January 1942 the Board entertained some thought that it might be able to bind those who were not signatories as demonstrated by its statement in Decision No. 2 heretofore quoted. However, the chairman of the Board on August 31, 1944, in replying to a communication of Congressman Bland (Exhibit 9) stated unequivocally that since the Southern Transportation Company, the defendant, was not a signatory to the Statement of Principles, it was under no obligation to insure the complement of the vessel unless under charter to the War Shipping Administration. That letter states further that the tug Menominee was not under the control of the War Shipping Administration at the time of the disaster. It is also significant that on May 12, 1945, following the surrender of Germany, when the Board was confronted with the necessity of affecting adjustments and considering its authority and jurisdiction, it was made clear that it was dealing only with the signatories to the Statement of Principles. 1945 A.M.C. 836.

While the purpose of the parties to the agreement is to be commended, to hold the defendant liable under this state of facts in effect would be to hold that a group of employers and employees, without any delegation of authority from either the Government or the defendant, may enact legislation binding upon the defendant and all others similarly situated. This view is not in accord with my conception of the law-making process of this country.

It is my opinion that the defendant is not obligated by reason of its failure to provide War Risk Insurance.

A judgment will be entered in accordance with the views here expressed.