## TIMBS et al. v. SOUTHERN TRANSP. CO.

### No. 5800.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 14, 1948.

Decided Nov. 8, 1948.

Abraham E. Freedman, of Philadelphia, Pa. (R. Arthur Jett and Henry E. Howell, Jr., both of Norfolk, Va., on the brief), for appellants.

Leon T. Seawell, of Norfolk, Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is a consolidated appeal in three companion cases brought by the administrators of the estates of three seamen who lost their lives when the Southern Transportation Company's seagoing tug, the Menominee, was shelled and sunk by an enemy submarine off the coast of Virginia in 1942. The suits were brought against the owner and operator of the tug on the theory that it was obliged by decisions of the Maritime War Emergency Board to provide for each seaman insurance in the amount of $5,000 against loss of life due to risks of war, and also to provide reimbursement for loss of personal effects in the sum of $300. The District Judge held that the rulings of the Maritime War Emergency Board were binding only on signatories to a document entitled "Statement of Principles", pursuant to which the Board was created, and that consequently the defendant, which was not a signatory, was not bound by the Board's decision. The sole question before us is the correctness of that holding.

The Maritime War Emergency Board was set up by the President under the following circumstances. On December 17, 1941, ten days after the Japanese attacked Pearl Harbor, the Maritime Commission and the Department of Labor called a conference in Washington to expedite shipping under wartime conditions. "Present at the conference were representatives of all seamen, licensed officers and radio operators unions, longshoremen unions, shipowners associations, steamship operators and other employees of waterfront labor." 1942 A.M.C. 308. Neither the defendant nor any one authorized to act for it was invited. The participants in the conference prepared a "Statement of Principles" (8 Fed.Reg. 3454) which was signed by thirty-six representatives of unions and operators, and by Admiral Land for the War Shipping Administration which controlled most of American shipping during the war. The text of this statement appears in the margin.[1] Exhibit "A" referred to in the statement, contained a joint request by the signatories to the President of the United States to establish a Board to resolve disputes between the steamship operators and labor unions with respect to war risk compensation and insurance. As a result of the conference the President on December 19, 1941, issued the following proclamation (8 Fed.Reg. 3385):

"Pursuant to the agreement reached on December 19, 1941, between representatives of the maritime industry and the labor organizations involved, and in accordance with their joint request that a Board to expedite and coordinate the war efforts of the maritime industry be appointed, I hereby designate John R. Steelman of the U. S. Department of Labor, Edward Macauley, of the U. S. Maritime Commission, and Frank P. Graham, President of the University of North Carolina, to serve as members of this Board. The Board shall

1 1. In so far as areas, war bonuses, and insurance are concerned, it is regarded as desirable and necessary that a uniform basis for each item covering the entire nation and the entire industry be reached.

2. Without waiving the right to strike, maritime labor gives the Government firm assurance that the exercise of this right will be absolutely withheld for the period of the war; on a voluntary basis therefore this is a guarantee on the part of labor that there will be no strikes during the period of the war. Representatives of employers in the maritime industry also guarantee there will be no lockouts for the period of the war.

3. The utilization of collective bargaining will in no instance be impaired or restricted by reason of any action taken at this conference. It is understood and agreed that all rights guaranteed to labor and industry with respect to collective bargaining will be retained and all agreements and obligations arising as a result of collective bargaining agreements will in no way be violated. During the period of the war there shall be no limitation or curtailment of the productive or service capacities of either employer or employee.

4. To provide machinery for the settlement of disputes without interruption of service or stoppage of work during the period of the war and to insure the application of the maximum war effort and coordination of all war activities coming within the purview of the maritime industry, the Maritime War Emergency Board with the powers and purposes set forth in Exhibit "A", attached hereto, will be created."

be known as the Maritime War Emergency Board and its powers and purposes shall be those set forth in accordance with Exhibit 'A' of the agreement referred to above."

On December 22, 1941, the Maritime War Emergency Board issued Decision No. 1 which provides that "each member of the crew of any merchant vessel documented under the laws of the United States and covered by the Statement of Principles pursuant to which the Board has been established, including such vessels now at sea, shall be insured against loss of life to risks of war or warlike operations, in the amount of $5,000 * * *." This direction was reaffirmed by Supplement of February 6, 1942, and an amendment of February 24, 1942. See 8 Fed. Reg. 3455. ·

■ The plaintiffs contend that these decisions were binding throughout the shipping industry, including operators like the defendant who did not sign the Statement of Principles. They argue that the language of the Statement is not the language of contract, but of request to the President for executive action; and that the object of the Statement was to establish a uniform basis for war risk insurance covering the entire industry which was beyond the power of the signatories alone to realize. .

We do not think, however, that the Statement of Principles, when read in connection with the President's proclamation, supports this position, even if we assume that the war powers of the President were broad enough to justify the creation of an agency empowered to compel every ship operator in the United States to cover all of its seamen with war risk insurance.[2] The proclamation refers to no authority, either constitutional or statutory, but merely "designates" the members of the Board, "pursuant to the *agreement* reached on December 19, 1941, between representatives of the maritime industry and the labor organizations *involved*." (Italics supplied) It should be noted that the President called the Statement of Principles an

"agreement" and while, as plaintiffs contend, it may not have imposed obligations from the moment of its execution, it may be fairly read as an agreement to be bound by the decisions of the Maritime War Emergency Board when and if the President created it.

■ It is the Board's uniform interpretation of its own powers, however, which we think is decisive against the plaintiffs. We give the administrative interpretation special weight in this case because the speed and comparative informality with which the Board was created render resort to more formal sources of guidance extremely difficult. This interpretation was manifested in various ways on a number of occasions. The former secretary of the Board testified that at no time did the Board ever attempt to exercise jurisdiction over any but signatories to the Statement of Principles. All the evidence in the case is consistent with this testimony, and in fact indicates a consistent disclaimer of such jurisdiction. On January 22, 1942, the Chairman of the Board telegraphed to the defendant in response to a specific inquiry, that defendant was not obliged to abide by the Board's decision because *defendant was not represented at the meeting at which the Statement of Principles was adopted*, and on January 31, 1942, the telegram was followed by a letter from the chairman to the same effect. While plaintiffs objected to the admission of these communications on the ground that the action of the chairman alone cannot bind the board, we think that they are admissible at least as showing the personal opinion of the chairman which was entitled to great weight. Morever, in January, 1942, the Board issued a clarification of its Decision No. 2 of January 10, 1942, which classified voyages of merchant ships and the bonus payments applicable thereto. This clarification order, which was signed by all three members of the Board, contained the following question and answer:

"Question No. 3: Who is bound by Decision No. 2 of the Maritime War Emergency Board?

---

[2] It is noteworthy that insurance for members of the armed forces was subject to legislative action by Congress, 38 U.S.C.A. § 511 et seq., § 801 et seq.

"Answer: The decisions of the Board are binding only on the signatories to the Statement of Principles. The Board considers that compliance with decisions by owners, operators or employees of the American Merchant Marine, not signatories to the Statement of Principles is not compulsory. The Board invites attention, however, to the following statement in Decision No. 2: 'All owners and operators of United States flag vessels of the American Merchant Marine and all licensed and unlicensed personnel employed on these vessels are expected to conform to this decision.' "

Plaintiffs seek to discredit this clarification because the decision which it purported to clarify dealt with war risk bonus and not insurance, and hence the attention of the Board was not directed to the specific problem in the instant case. This argument, however, ignores the explicit language of the answer. While the question asks merely who is bound by Decision No. 2, the answer is clearly a general statement of the scope of the Board's jurisdiction.

■ Plaintiffs contend further that the order is invalid because no hearing was held before it was issued. But this contention overlooks the fact that the Statement of Principles requires notice and hearing only "when any difference shall arise between any steamship operator and any union representing its employees", and the clarification order was not issued to resolve any such difference.

■ Plaintiffs also question the validity of the order because the staff member who prepared it was shown to be unfamiliar with certain aspects of the Board's organization and duties, and with the court decisions affecting the Board. The order, however, was signed by all three Board members, whose official act cannot be questioned merely because of the alleged lack of expertness of the staff member who actually drafted it.

The interpretation of the Board was reiterated on August 31, 1944, by its Chairman in a letter to a Congressman in response to an inquiry about the possibility of relief for one of the seamen killed in the very disaster which gave rise to the claims in the case at bar; and in 1945 the Board unambiguously went on record as being of the opinion that its jurisdiction was limited to the signatories of the Statement of Principles. 1945 A.M.C. 836.

The Board's position commends itself as realistic and practical. Though the precise number is uncertain, a large majority of the operators whose ships were seriously exposed to war risks were signatories to the Statement of Principles, and hence obliged to take out war risk insurance. Small tugs operating within coastal waters were not worth while targets for enemy action, and we are advised that the disaster giving rise to this litigation was unique. It would require much clearer expression in the Statement of Principles and the Presidential proclamation creating the Board to convince us that the Board was empowered to impose the heavy burden of compulsory insurance on towboat companies such as the defendant.

In support of their position, the plaintiffs rely upon the testimony of the Chairman of the Legislative Committee of the Maritime Commission, a separate body from the Maritime War Emergency Board, before a committee of Congress, H.R. 7548, 77th Cong., 2d Sess., Sept. 30, 1942, p. 5, when he said that under the decisions of the Maritime War Emergency Board insurance for seamen in the American Merchant Marine against war risks was compulsory. The witness did not say expressly that the decisions of the Board were binding on all operators of ships, whether they signed the Statement of Principles or not. But even if that was his meaning, it cannot prevail over the interpretation repeatedly published by the agency entrusted with the responsibility of governing the industry during the war.

Plaintiffs also rely on the decisions in Gulf Oil Corp. v. Lastrap, D.C.S.D.Tex., 48 F.Supp. 947, and Jones v. Atlantic Refining Co., D.C.E.D.Pa., 55 F.Supp. 17, but in these cases applicability of the decisions of the Maritime War Emergency Board was conceded, so that the point involved in the case at bar was not raised.

The decision of the District Court is Affirmed.